cc.     On or about November 10, 2010, Defendants in New York, through the use of interstate mail, caused the mailing of a letter to Mr. Marrou in Florida;

dd.     On or about April 5, 2011, Defendants in New York, through the use of interstate mail, caused the mailing of a letter to Mr. Marrou in Florida, requiring him to appear in New York in connection with Defendants' bogus lawsuit;

ee.     On or about June 27, 2011, Defendants in New York, through the use of interstate mail, caused the mailing of a letter to Mr. Marrou in Florida;

ff.     On or about October 18, 2011, Defendants in New York, through the use of interstate mail, caused the mailing of a letter to Mr. Marrou in Florida;

gg.     On or about November 4, 2011, Defendants in New York, through the use of interstate mail, caused the mailing of a letter to Mr. Marrou in Florida, requiring him to appear in New York in connection with Defendants' bogus lawsuit;

hh.     On or about January 24, 2012, Defendants in New York, through the use of interstate mail, caused the mailing of a summons and complaint, ostensibly to Ms. Murrell in Florida;

ii.     On or about February 15, 2012, Defendants in New York, through the use of interstate mail, caused the mailing of a summons and complaint, ostensibly to Ms. Murrell in Florida;

jj.   On or about June 15, 2009, Defendants in New York, through the use of interstate mail, caused the mailing of the summons and complaint ostensibly to Dr. Shabnam in California;

kk.   On or about July 24, 2009, Defendants in New York, through the use of interstate mail, caused the mailing of another copy of the summons and complaint ostensibly to Dr. Shabnam in California;

ll.   On or about April 1, 2010, Defendants in New York, through the use of interstate mail, caused the mailing of an "Advice of Judgment" to Dr. Shabnam in California;

mm.   On or about November 29, 2010, Dr. Shabnam in California mailed a letter to the New York City Civil Court in New York;

nn.   On or about November 29, 2010, Dr. Shabnam in California mailed a letter to Defendants in New York;

oo.   On or about February 22, 2011, Dr. Shabnam in California mailed the signed order to show cause with supporting papers to Defendants in New York;

148.   Each participant knew, expected, reasonably foresaw, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

149.   The Conspirators, wilfully and with intent to mislead, concealed the material facts from the New York City Civil Court and from Plaintiffs as referred to above.

150.  The material misrepresentations were made by Conspirators to the New York City Civil Court concerning Plaintiffs, and to Plaintiffs, Mr. Angermeir in California, Mr. Bhagwanani in California, Mr. Elder in Texas, Ms. Glynn in Texas, Mr. Goyal in South Carolina, Ms. Greene in Oklahoma, Mr. Marrou in Florida, Ms. Murrell in Florida, and Dr. Shabnam in California.

151.  The New York City Civil Court, and Plaintiffs, relied upon Defendants' misrepresentations, and such reliance was reasonable.

152.  Defendants' perjurious misconduct was a fraud on the court and on Plaintiffs.

## Wire Fraud, Violations of 18 U.S.C. §1343

153.  Defendants and the other Members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, made phone calls with the use of interstate wires, and/or transmitted by means of interstate wire directives to various Automated Clearing Houses to deduct monies from accounts of lessees that Defendants knew they were not entitled to, and/or electronically accessed and pulled the consumer credit report of each Plaintiff from credit reporting agencies. For example,

a.  On or about November 13, 2008, Defendants in New York, through the use of interstate wires, made a telephone call to Mr. Bhagwanani;

b.  On or about November 21, 2008, Defendants in New York, through the use of interstate wires, made a telephone call to Mr. Bhagwanani;

c.    On or about January 1, 2009, Defendants in New York, through the use of interstate wires, made a telephone call to Mr. Bhagwanani;

d.    On or about March 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

e.    On or about April 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

f.    On or about May 2, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

g.    On or about June 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

h.    On or about July 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

i.      On or about August 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

j.      On or about September 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

k.      On or about October 3, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

l.      On or about November 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

m.      On or about December 1, 2005, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

n.      On or about January 3, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system,

electronically collected $59.69 from the business bank account of Ms. Greene;

o.    On or about February 1, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

p.    On or about March 1, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

q.    On or about April 3, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

r.    On or about May 1, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

s.    On or about June 1, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

t.    On or about July 3, 2006, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $59.69 from the business bank account of Ms. Greene;

u.    On or about September 7, 2010, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Marrou from Experian, a credit reporting agency, outside New York State;[8]

v.    On or about October 14, 2010, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Marrou from Experian, a credit reporting agency, outside New York State;

w.    On or about March 21, 2010, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Marrou from Experian, a credit reporting agency, outside New York State;

x.    On or about November 1, 2010, Defendants in New York, through the use of interstate wire communication and the interstate banking system, electronically collected $29.97 from the business bank account of Ms. Murrell;

---

[8]Defendants' systems are set up in such a way that each alleged lessee's, *i.e.*, Plaintiff's, consumer credit report was electronically accessed and pulled automatically at the time of lease origination.  Such automated pulls do not require any human intervention.

Chittur & Associates, P.C.          *Angermeir v. Cohen*, First Amended Complaint
New York, New York                                    Page 44

y.      On or about December 1, 2010, Defendants in New York, through the use
of interstate wire communication and the interstate banking system,
electronically collected $27.40 from the business bank account of Ms.
Murrell;

z.      On or about January 2, 2011, Defendants in New York, through the use of
interstate wire communication and the interstate banking system,
electronically collected $69.14 from the business bank account of Ms.
Murrell;

aa.     On or about May 22, 2009, Defendants in New York, through the use of
interstate wires, electronically accessed and pulled the consumer credit
report of Mr. Angermeir from Experian, a credit reporting agency, outside
New York State;

bb.     On or about June 14, 2009, Defendants in New York, through the use of
interstate wires, electronically accessed and pulled the consumer credit
report of Mr. Angermeir from Experian, a credit reporting agency, outside
New York State;

cc.     On or about July 14, 2009, Defendants in New York, through the use of
interstate wires, electronically accessed and pulled the consumer credit
report of Mr. Angermeir from Experian, a credit reporting agency, outside
New York State;

dd.     On or about August 20, 2009, Defendants in New York, through the use of
interstate wires, electronically accessed and pulled the consumer credit

report of Mr. Angermeir from Experian, a credit reporting agency, outside New York State;

ee.   On or about September 20, 2009, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Angermeir from Experian, a credit reporting agency, outside New York State;

ff.   On or about October 20, 2009, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Angermeir from Experian, a credit reporting agency, outside New York State;

gg.   On or about December 1, 2009, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Angermeir from Experian, a credit reporting agency, outside New York State;

hh.   On or about February 3, 2010, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Angermeir from Experian, a credit reporting agency, outside New York State;

ii.   On or about February 5, 2010, Defendants in New York, through the use of interstate wires, electronically accessed and pulled the consumer credit report of Mr. Angermeir from Experian, a credit reporting agency, outside New York State;

jj.    On or about October 2, 2008, Defendants, through the use of interstate wires, faxed a copy of the alleged Form Lease to Mr. Angermeir in California; and

kk.    On or about November 20, 2008, Defendants, through the use of interstate wires, faxed a copy of the alleged Form Lease to Mr. Angermeir in California.

154.   Defendants, in the same manner through the use of interstate wires, made dunning telephone calls to abuse, intimidate, and threaten Plaintiffs on numerous other occasions.  The details of each of these phone calls is readily available from Defendants' records and recordings.  Every such phone call was a "wire fraud" within the meaning of the wire fraud statute, 18 U.S.C. §1343.

155.   Defendants, in the same manner through the use of interstate wires, electronically accessed the consumer credit reports of each Plaintiff on numerous other occasions.  The details of each of these electronic accesses are readily available from Defendants' records and recordings. Every such electronic access was a "wire fraud" within the meaning of the wire fraud statute.  18 U.S.C. §1343.

156.   Defendants, in the same manner through the use of interstate wires, electronically deducted money from the bank accounts of businesses controlled by each Plaintiff on numerous other occasions.  The details of each of these electronic deductions is readily available from Defendants' records and recordings.  Every such deduction was a "wire fraud" within the meaning of the wire fraud statute.  18 U.S.C. §1343.

157.    Each participant knew, expected, reasonably foresaw, and intended that the facilities of the interstate wires affecting interstate commerce would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

158.    The Conspirators wilfully and with intent to mislead concealed material facts, and made affirmative misrepresentations of material facts to Plaintiffs.

159.    Plaintiffs relied upon Defendants' misrepresentations, and such reliance was reasonable.

Extortion Under The Hobbs Act, 18 U.S.C. §1951

160.    Defendants had and implemented a practice and pattern of starting bogus legal proceedings based on false representations, and solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion.

161.    For this purpose, Defendants affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that:

a.    Mr. Angermeir "unconditionally guaranteed all of the Lessee's obligations to" Defendant MBF Leasing;

b.    Mr. Angermeir "entered into an Equipment Finance Lease" with Defendant MBF Leasing and "personally guaranteed" payments under the lease;

c.    Mr. Angermeir "consent[ed]" to litigation in New York;

d.  There was "presently due and owing" from Mr. Angermeir to Defendant MBF Leasing the sum of $3,680.00 with interest thereon from February 1, 2009;

e.  There "is due and owing" from Mr. Angermeir to Defendant MBF Leasing attorneys' fees in the sum of $736.00.

162.  Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.  Mr. Bhagwanani "unconditionally guaranteed all of the Lessee's obligations to" Defendant Northern Leasing;

b.  Mr. Bhagwanani "entered into an Equipment Finance Lease" with Defendant Northern Leasing and "personally guaranteed" payments under the lease;

c.  Mr. Bhagwanani "consent[ed]" to litigation in New York;

d.  There was "presently due and owing" from Mr. Bhagwanani to Defendant Northern Leasing the sum of $5,934.00 with interest thereon from January 1, 2009; and

e.  There "is due and owing" from Mr. Bhagwanani to Defendant Northern Leasing' attorneys' fees in the sum of $1,860.80.

163.  Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.  Mr. Elder "unconditionally guaranteed all of the Lessee's obligations to" Defendant MBF Leasing;

b.   Mr. Elder "entered into an Equipment Finance Lease" with Defendant MBF Leasing and "personally guaranteed" payments under the lease;

c.   Mr. Elder "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Mr. Elder to Defendant MBF Leasing the sum of $3,198.40 with interest thereon from November 1, 2010; and

e.   There "is due and owing" from Mr. Elder to Defendant MBF Leasing attorneys' fees in the sum of $639.68.

164.   Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.   Ms. Glynn "unconditionally guaranteed all of the Lessee's obligations to" Defendant MBF Leasing;

b.   Ms. Glynn "entered into an Equipment Finance Lease" with Defendant MBF Leasing and "personally guaranteed" payments under the lease;

c.   Ms. Glynn "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Ms. Glynn to Defendant MBF Leasing the sum of $3,850.00 with interest thereon from August 1, 2009;

e.   There "is due and owing" from Ms. Glynn to Defendant MBF Leasing attorneys' fees in the sum of $770.00;

165.   Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.   Mr. Goyal "unconditionally guaranteed all of the Lessee's obligations to" Defendant Northern Leasing;

b.   Mr. Goyal "entered into an Equipment Finance Lease" with Defendant Northern Leasing and "personally guaranteed" payments under the lease;

c.   Mr. Goyal "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Mr. Goyal to Defendant Northern Leasing the sum of $4,434.75 with interest thereon from March 1, 2008;

e.   There "is due and owing" from Mr. Goyal to Defendant Northern Leasing attorneys' fees in the sum of $886.95;

166.   Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.   Ms. Greene "unconditionally guaranteed all of the Lessee's obligations to" Defendant Northern Leasing;

b.   Ms. Greene "entered into an Equipment Finance Lease" with Defendant Northern Leasing and "personally guaranteed" payments under the lease;

c.   Ms. Greene "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Ms. Greene to Defendant Northern Leasing the sum of $1,449.71, with interest thereon from August 1, 2006;

e.   There "is due and owing" from Ms. Greene to Defendant Northern Leasing attorneys' fees in the sum of $289.94.

167.   Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.   Mr. Marrou "unconditionally guaranteed all of the Lessee's obligations to" Defendant Northern Leasing;

b.   Mr. Marrou "entered into an Equipment Finance Lease" with Northern Leasing and "personally guaranteed" payments under the lease;

c.   Mr. Marrou "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Mr. Marrou to Northern Leasing the sum of $7,003.00 with interest thereon from October 1, 2010;

e.   There "is due and owing" from Mr. Marrou to Northern Leasing' attorneys' fees in the sum of $1,400.60.

168.   Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.   Ms. Murrell "unconditionally guaranteed all of the Lessee's obligations to" Defendant Northern Leasing;

b.   Ms. Murrell "entered into an Equipment Finance Lease" with Defendant Northern Leasing and "personally guaranteed" payments under the lease;

c.   Ms. Murrell "consent[ed]" to litigation in New York;

d.   There was "presently due and owing" from Ms. Murrell to Defendant Northern Leasing the sum of $2,759.54, with interest thereon from February 1, 2011;

e.     There "is due and owing" from Ms. Murrell to Defendant Northern Leasing' attorneys' fees in the sum of $689.89.

169.    Defendants similarly affirmatively misrepresented in filings with the New York City Civil Court in New York, under penalties of perjury, that

a.     Dr. Shabnam "unconditionally guaranteed all of the Lessee's obligations to" Defendant Lease Finance Group;

b.     Dr. Shabnam  "entered into an Equipment Finance Lease" with Defendant Lease Finance Group and "personally guaranteed" payments under the lease;

c.     Dr. Shabnam  "consent[ed]" to litigation in New York;

d.     There was "presently due and owing" from Dr. Shabnam  to Defendant Lease Finance Group the sum of $6,348.00 with interest thereon from June 16, 2008;

e.     There "is due and owing" from Dr. Shabnam  to Defendant Lease Finance Group attorneys' fees in the sum of $1,269.60.

170.    These representations were part of Defendants' standard form, boilerplate complaints filed in the New York City Civil Court.  These representations were verified by different Individual Defendants as detailed earlier, abundantly establishing concerted action and conspiracy.

171.    Defendants knew, and should have known, that the above representations were false when made.  Defendants' knowing fraud upon, and/or their intentional

misrepresentations to, the New York City Civil Court deprived the litigation of its legitimacy.

172.   Nevertheless, Defendants commenced actions in The New York City Civil Court with the aforesaid false statements.  Based upon such actions, they attempted to extort undeserved sums of money from Plaintiffs.

173.   Thereby, Defendants used wrongful means for a wrongful objective, with an intent to obtain that which in justice and equity Defendants were not entitled to, and knew that they were not entitled to, receive.

174.   Defendants affected interstate commerce by extortion and/or attempted or conspired so to do.

175.   Defendants attempted to extort property from each Plaintiff, with each Plaintiff's consent, induced by wrongful use of actual or threatened fear of economic loss and/or injury.  Such loss or injury included, without limitation, legal expenses in long-distance litigation, damage to credit rating, and/or entry of default judgments, and freezing of bank accounts.

## Extortion Under New York Law

176.   Plaintiffs incorporate the aforesaid allegations herein by reference.

177.   Defendants intended to deprive Plaintiffs of property or to appropriate the same to themselves.  They wrongfully took or obtained, or attempted to take or obtain, such property from each Plaintiff.

178.   Defendants wrongfully attempted to take such property by compelling or inducing Plaintiffs and other persons to deliver such property to Defendants.

They did so by attempting to induce a fear that, if the property is not so delivered, Defendants would cause damage to Plaintiffs' property, or engage in other conduct constituting a crime, or testify or provide false information with respect to Defendants' legal claim.

179. Thereby, Defendants committed the offense of extortion under New York's Extortion Act, N.Y. Penal Law, §155.05.

180. Defendants' extortions are chargeable under New York law and punishable by imprisonment for more than one year.  As such, they constitute predicate racketeering acts under 18 U.S.C. §1961.

Pattern of Racketeering Activity

181. The aforesaid acts had the same or similar purposes, results, participants, victims, and/or methods of commission, and were otherwise interrelated by distinguishing characteristics and were not isolated events.  The pattern of racketeering activity engaged in by Defendants consisted of a scheme executed by the aforementioned Conspirators from January 1998, and continuing to date, to extort and collect unwarranted sums through litigation based on perjurious averments or threats thereof.  That pattern included multiple predicate acts of extortion, mail fraud, and wire fraud.

182. The racketeering acts identified hereinabove were related to one another and formed a pattern of racketeering activity in that they: (a) were in furtherance of a common goal, including the goal of profiting illegally by improperly commencing or threatening fraudulent litigation, by improperly threatening to ruin consumer

credit scores, and by improperly making adverse entries in consumer credit reports; (b) used similar methods and standard form letters to intimidate; (c) had similar participants; and (d) had similar victims.

183. The acts of racketeering activity extended over a substantial period of time from January 1998, and continue to this day. They were sufficiently continuous to form a pattern of racketeering activity.

184. Defendants participated in the scheme through themselves, and, in the case of the corporate Defendants, their representatives, salesmen, employees and officers, and others whose identities are known only to Defendants at this time. Defendants benefitted enormously by the profits they made from the scheme, and the various amounts collected unlawfully. The Conspirators knew, enabled, and actively participated in the racketeering scheme.

185. Defendants engaged in a pattern of racketeering activity consisting of extortion, mail fraud and wire fraud. The predicate acts occurred over a period of well over 6 years. Defendants received income from these patterns in the form of unwarranted payments. Defendants disbursed these funds amongst themselves in a manner known only to them.

186. Each Defendant's participation was critical to the racketeering scheme. Each Defendant enabled, conducted, maintained, participated in, and/or aided, and abetted the racketeering scheme by:

a.    Drafting and preparing letters, "Important Notices," Verified Complaints, false affidavits, and other documents;

b.    Supervising, conducting, and monitoring the conduct of the fraudulent scheme;

c.    Concealing the scheme or, alternatively, consciously took steps to avoid discovery of the scheme;

d.    encouraging third parties to participate in the racketeering scheme;

e.    wilfully violating, or being recklessly indifferent to, mandatory requirements of federal law and procedure concerning racketeering, and the misuse of the judicial system;

f.    Wilfully violating or being recklessly indifferent to their legal obligations to verify the validity of the alleged lease agreements;

g.    Wilfully violating or being recklessly indifferent to their legal obligations to conduct a reasonable investigation into allegations of forgery by Plaintiffs and other victims; and

h.    Wilfully violating or being recklessly indifferent to their legal obligations to conduct "due diligence" with respect to the accounts at issue.

187.    The precise role played by each Defendant is known only to Defendants at this time. Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of Defendants.

188.    Plaintiffs have been injured in their business or property by reason of Defendants' violation of 18 U.S.C. §1962(c). As a direct and proximate result of these violations, Plaintiffs have been injured in that, inter alia, their business accounts were debited wrongfully, and they had to waste time and resources in responding

to Defendants's dunning calls, threats, and lawsuit in New York; in retaining lawyers and incurring legal expenses therefor. In addition, Plaintiffs' consumer credit rating has also been adversely affected, and they have suffered damages as detailed above.

189.  By reason of this violation of 18 U.S.C. §1964(c), Plaintiffs are entitled to recover from Defendants three times their damages plus pre- and post- judgment interest, costs and attorneys' fees.

## COUNT II

### (Violation of 18 U.S.C. § 1962(d))

190.  The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

191.  In violation of 18 U.S.C. § 1962(d), Defendants and others whose identities are known only to Defendants at this time conspired to violate the provisions of 18 U.S.C. §1962(c) in that, beginning no later than January 1998 and continuing through today, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above. The volume and frequency of the transactions, and the continuance of the scheme at issue for over 14 years, could not have occurred without the consent and knowing connivance of Defendants and other Conspirators.

192.  As part of and in furtherance of their conspiracy, each Defendant agreed to and conspired in the commission of the many predicate acts described above, with the

knowledge that they were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each Defendant agreed to and did commit at least two predicate acts of racketeering. Further, each Defendant's actions are attributable to the other Defendants.

193.   None of the Defendants have withdrawn, or otherwise dissociated themselves from the conspiracy at issue or the other Conspirators. Defendants have also continued filing of perjurious affidavits under oath, showing the continuance of this conspiracy till today.

194.   Plaintiffs have been injured in business or property by reason of Defendant's violations of 18 U.S.C. S 1962(d).

195.   As a direct and proximate result of each Defendant's violations, Plaintiffs have been injured as aforesaid.

196.   By reason of Defendants's violation of 18 U.S.C. §1964(d), Plaintiffs are entitled to three times their damages plus interest, costs and attorneys' fees.

## COUNT III

### (N.Y. General Business Law Article 22-A)

197.   Plaintiffs incorporate the contents of the paragraphs hereinabove.

198.   None of the Plaintiffs had any commercial or other relationship with Defendants or any of them. None of the Plaintiffs signed any lease with Defendants or any of them. None of the Plaintiffs sought any of Defendants' alleged products or services for any purpose whatsoever. Plaintiffs were ordinary citizens and as such, "consumers" for purposes of consumer protection statutes.

199. Further, Defendants nonchalantly misused the court system of the State of New York and the City of New York, and routinely made false and baseless statements with reckless abandon, and even after knowing the falsity of such statements. Even after the New York City Civil Court rejected jurisdiction because it would deprive Defendants' victims of their day in Court, Defendants nonchalantly continued commencing and prosecuting such lawsuits, obtaining default judgments, and enforcing such default judgments. Litigants depend on the integrity of the conduct of participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability. For a litigant and its Conspirators to concoct testimony or make false statements under oath even after they know it is wholly fabricated and baseless is an unacceptable fraud on the court. Defendants' conduct at issue was thus, a deceptive and/or unfair practice which affected, and continues to affect, the public at large.

200. Defendants committed deceptive acts or practices in the conduct of business in New York. Their conduct was unlawful and of a recurring nature, and strongly affected the public interest. By their conduct aforesaid, Defendants violated Article 22-A (Section 349) of New York's General Business Law.

201. Plaintiffs sustained damages due to Defendants' violation. Accordingly, under Section 349(h) of New York's General Business Law, Plaintiffs are entitled to recover statutory, compensatory, and treble damages and reasonable attorneys' fees and expenses. In addition, Plaintiffs are also entitled to an injunction against Defendants preventing them from continuing the aforesaid deceptive practices.

## Jury Demand

202.   Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs demand judgment against Defendants on each

Count aforesaid:

a.   awarding compensatory, punitive, and/or treble damages to Plaintiffs in

such amount as may be determined after discovery and trial;

b.   awarding Plaintiffs the costs of this action, including reasonable attorneys'

fees and expenses, experts' fees and other disbursements; and

c.   for such further and other reliefs as may be just and proper.

Dated:        New York, New York          **Chittur & Associates, P.C.**
              August 21, 2012

By:  Krishnan Chittur, Esq. (KC9258)
286 Madison Avenue Suite 1100
New York, NY 10017
Tel: (212) 370-0447

Attorneys for Plaintiffs