UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR ANGERMEIR, NITESH BHAGWANANI,
KEN ELDER, BECKY D. GLYNN, RAJAT GOYAL,
KRISTINA GREENE, LOUIS MARROU, MARILYN
MURRELL, AND DR. SHIVA NANCY SHABNAM,

                                      Plaintiffs,

          – against –

JAY COHEN, SARA KRIEGER, JENNIFER CENTENO,
LOUIS CUCINOTTA, RICARDO BROWN, ROBERT
TAYLOR, JOSEPH I. SUSSMAN, JOSEPH I.
SUSSMAN, P.C., LEASE FINANCE GROUP, LLC, MBF
LEASING LLC and NORTHERN LEASING SYSTEMS,
INC.,

                                      Defendants.

12 Civ. 0055 (KMK)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

MOSES & SINGER LLP
*Attorneys for Defendants*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

Of Counsel:

Robert D. Lillienstein, Esq.

951037

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

ALLEGATIONS IN THE COMPLAINT ........................................................................3

ARGUMENT ..................................................................................................................7

I.      LUMPING DEFENDANTS TOGETHER VIOLATES RULE 8(A) ..............................7

II.     LUMPING DEFENDANTS TOGETHER VIOLATES RULE 9(B) .............................10

III.    THE FAC DOES NOT ADEQUATELY ALLEGE THAT THE PLAINTFFS
        SUSTAINED DAMAGE TO THEIR BUSINESS OR PROPERTY BY REASON
        OF A RICO VIOLATION..............................................................................13

        A.      Plaintiffs Have Not Alleged That They Have Sustained Damage To Their
                Business or Property ............................................................................13

        B.      Alleged Deductions From Plaintiffs' Business Bank Accounts Were Not
                Proximately Caused By The Alleged RICO Violation........................................14

IV.     THE COMPLAINT DOES NOT ALLEGE PREDICATE ACTS OF
        EXTORTION ................................................................................................16

V.      PLAINTIFFS' RICO CONSPIRACY CLAIM MUST ALSO BE DISMISSED ............18

VI.     PLAINTIFFS' SECTION 349(a) CLAIM SHOULD BE DISMISSED ........................19

VII.    GREEN'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF
        LIMITATIONS ..............................................................................................23

CONCLUSION ................................................................................................................24

CASES

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
 633 F.Supp.2d 15 (S.D.N.Y. 2009) ........................................................................ 11, 13

*Acosta Orellana v. CropLife Int'l*,
 711 F. Supp. 2d 81 (D.D.C. 2010) ................................................................................. 11

*Adler v. Berg Harmon Assocs.*,
 790 F.Supp. 1222 (S.D.N.Y. 1992) ................................................................................ 19

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
 483 U.S. 143, 107 S.Ct. 2759 (1987) ............................................................................. 23

*Aldrich v. Northern Leasing Systems, Inc. et al.*,
 Index No. 602803/07 ....................................................................................................... 20

*Allen v. New World Coffee, Inc.*,
 2001 WL 293683 (S.D.N.Y. Mar. 27, 2001) .................................................................. 19

*Andrea Doreen Ltd. v. Building Material Local Union 282*,
 299 F. Supp.2d 129 (E.D.N.Y. 2004) ............................................................................. 17

*Anesthesia Associates of Mount Kisco, LLP v. Northern Westchester Hosp. Center*,
 59 A.D.3d 473, 873 N.Y.S.2d 679 (2d Dept. 2009) ...................................................... 20

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
 2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 18, 2004) ............................................. 12

*Arar v. Ashcroft*,
 585 F.3d 559 (2d Cir. 2009) ........................................................................................... 19

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S.Ct. 1937 (2009) ..................................................................... 7, 8, 12

*Atuahene v. City of Hartford*,
 10 Fed. App'x 33 (2d Cir. 2001) ................................................................................... 8, 9

*Avdon Capitol Corp. v. Nationwide Mut. Fire Ins. Co.*,
 240 A.D.2d 353 (2d Dept. 1997) .................................................................................... 23

*Bates v. Nw. Human Servs.*, Inc.,
 466 F. Supp. 2d 69, 92 (D.D.C. 2006) ........................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................8

*Berkman v. Robert's American Gourmet Food*,
  2007 N.Y. Misc. LEXIS 4565 (Sup.Ct. N.Y. Co. June 26, 2007)...........................22

*Building Industry Fund v. Local Union No.3, Int'l Bhd. of Elec. Workers*,
  992 F. Supp. 162 (E.D.N.Y. 1996), *aff'd* 141 F. 3d 1151 (2d Cir. 1998) ..............17

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010) ...............................................................22

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*,
  758 F.Supp.2d 153 (E.D.N.Y.) *aff'd* 443 Fed. Appx. 582 (2d Cir. 2011).......................16, 17

*Denton v. Hernandez*,
  504 U.S. 25, 112 S.Ct. 1728 (1992) ....................................................................8

*DirecTV Inc. v. Lewis*,
  2005 WL 1006030 (W.D.N.Y. Apr. 29, 2005)......................................................17

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ...........................................................................12

*DLJ Mort. Capital Inc. v. Kontogiannis*,
  594 F.Supp.2d 308 (E.D.N.Y. 2009) ..................................................................10

*Drizin v. Sprint Corp.*,
  12 A.D.3d 245, 785 N.Y.S.2d 428 (1st Dep't 2004)............................................22

*Eaves v. Designs for Finance, Inc.*,
  785 F.Supp.2d 229 (S.D.N.Y. 2011) .................................................5, 10, 11, 22

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
  223 F.3d 12 (1st Cir. 2000), *cert. denied*, 121 S. Ct. 1228 (2001) .......................18

*Elias v. City of New York*,
  2010 WL 5475809 (E.D.N.Y. Dec 30, 2010) ........................................................8

*Feirstein v. Nanbar Realty Corp.*,
  963 F.Supp. 254 (S.D.N.Y. 1997) .....................................................................12

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) .............................................................................10

*G-I Holdings, Inc. v. Baron & Budd*,
  179 F. Supp. 2d 233 (S.D.N.Y. 2001) ................................................................17

*Goshen v. Mut. Life Ins. Co. of N.Y.,*
98 N.Y.2d 314 (2002) .......................................................................................20, 21, 22, 23

*Gotlin ex rel. County of Richmond v. Lederman,*
483 Fed.Appx. 583, 586 (2d Cir. 2012) ............................................................. 13

*Harris v. Mills,*
572 F.3d 66 (2d Cir. 2009) ...................................................................................7

*Hayden v. Paterson,*
594 F.3d 150 (2d Cir. 2010) .............................................................................7, 8

*Hernandez v. Ballesteros,*
333 F.Supp.2d 6 (D.P.R. 2004), *aff'd,* 449 F.3d 240 (1st Cir. 2006), *cert denied* 127
S. Ct. 964 (2007) .............................................................................................12

*Hollander v. Flash Dancers Topless Club,*
173 Fed.Appx. 15 (2nd Cir. 2006), *cert. denied,* 549 U.S. 829, 127 S.Ct. 49, 166
L.Ed.2d 49 (2006).......................................................................................14, 15

*In re Am. Express Co. S'holders Litig.,*
39 F.3d 395 (2d Cir.1994) ...................................................................................15

*Kaufman v. Sirius XM Radio, Inc.,*
2011 WL 2178630 .............................................................................................21

*Kaufman v. Sirius XM Radio, Inc.,*
751 F. Supp. 2d 681 (S.D.N.Y. 2010), *aff'd* 2012 WL 1109397 (2d Cir. Apr. 4, 2012) ........21

*Kaufman v. Sirius XM Radio, Inc.,*
No. 11-0121-cv, 2012 WL 1109397 (2d Cir. Apr. 4, 2012)..............................21, 22

*Knoll v. Schectman,*
275 Fed. Appx. 50 (2d Cir. 2008)........................................................................12

*Lakonia Management Ltd. v. Meriwether,*
106 F.Supp.2d 540 (S.D.N.Y. 2000) ...................................................................10

*Laverpool v. N.Y.C. Transit Auth.,*
760 F.Supp. 1046 (E.D.N.Y. 1991) ....................................................................19

*Lesavoy v. Gattullo-Wilson,*
170 Fed.Appx. 721 (2d Cir. 2006).......................................................................10

*Lightning Lube, Inc. v. Witco Corp,*
4 F.3d 1153 (3d Cir. 1993) ..................................................................................18

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986) ................................................................ 10

*Major League Baseball Props., Inc. v. Price*,
    105 F. Supp.2d 46 (E.D.N.Y. 2000) ................................................... 13

*Marcilis v. Township of Redford*,
    693 F.3d 589 (6th Cir. 2012) ............................................................... 9

*Mayfield v. General Elec. Capital Corp.*,
    1999 WL 182586 (S.D.N.Y. Mar 31, 1999) ...................................... 22

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992) ............................................................... 11

*Medina v. Bauer*,
    2004 WL 136636 (S.D.N.Y. Jan 27, 2004) .................................. 8, 13

*Nakahara v. Bal*,
    1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ........................................ 16

*Nat'l Group for Commc'n and Computers Ltd. v. Lucent Tech. Inc.*,
    420 F.Supp.2d 253 (S.D.N.Y. 2006) ................................................. 18

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F.Supp. 222 (S.D.N.Y. 1989) ..................................................... 11

*Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*,
    2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ...................................... 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995) ........................................................................... 20

*Park South Assocs. v. Fischbein*,
    626 F. Supp. 1108 (S.D.N.Y.), *aff'd mem.*, 800 F.2d 1128 (2d Cir. 1986) ............................ 17

*People ex rel. Spitzer v. Direct Revenue, LLC*,
    19 Misc.3d 1124(A), 862 N.Y.S.2d 816, 2008 WL 1849855 (Sup.Ct. N.Y.Co. Mar
    12, 2008) ...................................................................................... 22, 23

*Salinas v. United States*,
    522 U.S. 52, 118 S. Ct. 469 (1997) ................................................... 18

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479, 105 S.Ct. 3275 (1985) ................................................ 14

*Serin v. Northern Leasing Sys., Inc.*,
    2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009) ................................... 11

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,*
  642 F. Supp. 2d 167 (S.D.N.Y. 2009), *motion for reconsideration granted in part*,
  642 F. Supp. 2d 206 (S.D.N.Y. 2009) .................................................................22

*Siotkas v. Labone, Inc.,*
  Nos. 01-CV-6242 (SMG), 01-CV-6243 (SMG), slip op., 2009 WL 691967 (E.D.N.Y.
  Mar. 12, 2009) ..................................................................................................22

*Southerland v. New York City Housing Authority*,
  2010 WL 4916935 (E.D.N.Y. Nov 23, 2010) ..........................................................9

*Spinale v. United States et. al.*,
  2004 WL 50873 (S.D.N.Y. Jan. 9, 2004) ..............................................................13

*Vermont Right to Life Committee, Inc. v. Sorrell*,
  221 F.3d 376 (2d Cir. 2000) ................................................................................7

*Viacom Int'l Inc. v. Icahn,*
  747 F. Supp. 205 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2d Cir. 1991), *cert denied,*
  112 S. Ct. 1244 (1992) ......................................................................................16

*Wexner v. First Manhattan Co.*,
  902 F.2d 169 (2d Cir. 1990) ..............................................................................10

*Williams v. The Dow Chemical Co.*,
  255 F. Supp. 2d 219 (S.D.N.Y. 2003) ..................................................................13

**STATUTES**

18 U.S.C. §1962 ....................................................................................................1, 14

18 U.S.C. § 1962(d)............................................................................................18, 19

18 U.S.C. §1964(c)..........................................................................................2, 13, 14

Fed. R. Civ. P. 8(a) ...................................................................................1, 7, 8, 9, 13

Fed. R. Civ. P. 9(b).................................................................................1, 10, 11, 12

Fed. R. Evid., § 201 ....................................................................................................5

Hobbs Act, 18 U.S.C. §1951 ...................................................................................3, 16

N.Y. Penal L., § 155.05(2)(e) ..................................................................................3, 16

N.Y. General Bus. L., §349 .......................................................................................1, 19

## Preliminary Statement

Defendants Jay Cohen, Sara Krieger, Jennifer Centeno, Louis Cucinotta, Ricardo Brown, Robert Taylor, Joseph I. Sussman, Joseph I. Sussman, P.C., Lease Finance Group, LLC, MBF Leasing LLC ("LFG") and Northern Leasing Systems, Inc., MBF Leasing LLC ("MBF") and Northern Leasing Systems, Inc. ("NLS") (collectively, "Defendants"), by their attorneys, Moses & Singer, LLP, respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint ("FAC") (dkt #8).[1]  The FAC purports to assert two claims under the Racketeer Influenced Corrupt Organizations (RICO) statute, 18 U.S.C. §1962, and one claim under section 349(a) of the New York General Business Law ("section 349"), which proscribes the use of deceptive acts or practices directed at New York consumers.

The RICO and section 349 claims should be dismissed pursuant to Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, among other reasons, because the FAC fails to differentiate between the acts of the eleven (11) named Defendants.  Plaintiffs' practice of lumping all of the defendants together and alleging actions by "Defendants" – a remarkable 138 separate times – is impermissible under both Rules.  By doing so, the FAC fails to provide a plausible factual basis to distinguish between the conduct of each of the defendants, as required by Rule 8(a), and it lacks the specificity required by Rule 9(b).  In particular, the failure to comply with Rule 8(a) also affects Plaintiffs' attempt to plead predicate acts of mail fraud and wire fraud.  By lumping together the acts of all defendants, Plaintiffs fail to plausibly allege that any of them directed a mailing or transmission for the purpose of executing the fraudulent scheme.  As this is required to state a claim of mail or wire fraud, the FAC does not state a viable RICO claim.

---

[1]     For the convenience of the Court, a copy of the FAC is annexed as Exhibit A to the Declaration of Robert D. Lillienstein, dated January 11, 2013 (the "Lillienstein Dec.").

The RICO claims should also be dismissed because the FAC does not adequately allege that any of the Plaintiffs sustained damage to business or property, as required to state a claim under 18 U.S.C. §1964(c). Each of the Plaintiffs makes the same allegations regarding damages: (i) that they had to waste considerable time and effort; (ii) that they were subjected to considerable annoyance, embarrassment, emotional distress and mental anguish; (iii) that derogatory entries were made on their "personal consumer credit report[s]" (emphasis original), that they "suffered the usual consequences of such adverse reports"; and (iv) that they were forced to hire lawyers to defend against lawsuits brought against them individually. FAC, ¶¶40, 52, 60, 75, 88, 102, 110, 120, 129 and 188. These allegations make clear that none of the Plaintiffs' alleged damages are business related. RICO does not permit recovery of the types of damages that Plaintiffs all claim to have sustained.

The FAC attempts to remedy this defect by also alleging that the "Defendants" made deductions from the *business* accounts of four (though not all nine) of the Plaintiffs. However, the FAC makes clear that none of these deductions were caused by the alleged RICO violation, which is defined in the FAC as the pursuit of "fraudulent lawsuits" in New York City Civil Court based on forged documents (FAC, ¶1). All of the alleged deductions took place **before** any a lawsuit against these Plaintiffs was commenced. Accordingly, they do not constitute an injury to business **by reason of** an alleged RICO violation. The RICO violations were not the "but for" or proximate cause of the alleged deductions.[2]

The RICO counts in the FAC should also be dismissed to the extent that they purport to allege predicate acts of extortion. The linchpin of Plaintiffs' RICO claim here is that Defendants commenced or threatened baseless or fraudulent civil litigation. However, the filing of even a

_____

[2]    As Plaintiffs were already given one opportunity to cure this defect, the RICO counts should now be dismissed with prejudice.

meritless lawsuit does not, as matter of law constitute extortion, under New York or federal extortion law, because it does not involve threat of force, violence or fear, as required under both the N.Y. Penal Law § 155.05(2)(e) and the Hobbs Act, 18 U.S.C. §1951.

Plaintiffs' remaining claim, under section 349, should be dismissed because it fails to satisfy the requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, and because it does not state a viable claim under state law. Section 349 has been interpreted to protect against actions that have widespread impact on consumers generally. As alleged, Plaintiffs' section 349 claim involves isolated private transactions that are not protected by the statute. The section 349 claim should also be dismissed to the extent that Plaintiffs claim that their damage consists of deductions from Plaintiffs' out-of state bank accounts. Section 349 is a New York consumer protection statute that provides no relief to anyone who claims to have sustained damaged outside New York.

Finally, Ms. Greene's claims, which arose in 2007 when she learned that she was being sued by one of the Defendants, should be dismissed because they are barred by the applicable statutes of limitations – four years in the case of the RICO claims, and three years in the case of the section 349 claims. This action was commenced in January 2012. (dkt. #1). Ms. Greene's claims are therefore time-barred.

## Allegations In The Complaint

For purposes of this motion, the well pleaded facts in the Complaint are presumed to be true. However, many of the "facts" in the Complaint alleged are little more than conclusory statements of wrongdoing, without any factual support, which are not entitled to the presumption of truth.

NLS, LFG and MBF are engaged in the business of equipment lease financing. FAC, ¶¶21, 22, and 23. Plaintiffs assert that the "Defendants," acting in concert, engaged in a scheme

to commence "fraudulent lawsuits" in New York City Civil Court based on lease documents that they knew to be forged, or with knowledge "that Defendants never had a claim." *Id.*, ¶1. Eight of the nine Plaintiffs deny signing the lease on which suit was brought, while Plaintiff Bhagwanani alleges that he signed what he believed was a one page lease (*id.*, ¶41) (thus contradicting the allegation that his lease was forged, or that "Defendants" knew it to be forged.")

The Complaint purports to allege a RICO scheme against the three defendant corporations, a law firm and seven individual defendants. Defendants Cohen and Krieger are each alleged to be the "mastermind of the enterprise" which is the subject of this action. *Id.*, ¶¶13-14. Defendants Cohen, Krieger, Centeno, Cucinotta, Brown and Taylor are all alleged to be a principal, officer and/or controlling person of the corporate defendants. *Id.*, ¶¶13-18. Krieger, Centeno, Cucinotta, Brown and Taylor are alleged to have verified complaints in the New York City Civil Court, although the FAC fails to identify any of those Complaints. *Id.*, ¶14-18. Defendant Sussman is alleged to be an attorney whose law firm commenced the allegedly fraudulent actions against Plaintiffs in the New York City Civil Court. *Id.*, ¶19.

Most of the other factual allegations concerning the actions of the Defendants are asserted against all eleven "Defendants" generally, without any attempt to specify which allegations relate to which defendant. For example, the FAC implausibly alleges that all eleven "Defendants" "made the same derogatory entries in Mr. Angermeir's <u>personal</u> credit report." FAC, ¶40 (emphasis original).[3] It also alleges, implausibly, that all eleven "Defendants" mailed

---

[3]    The nearly identical allegation is made with respect to each of the other plaintiffs. FAC, ¶¶52, 60, 75, 88, 102, 110, 120, 129.

the same letter or paper on thirty-eight (38) separate occasions.[4]  FAC, ¶147.  The FAC also alleges, implausibly, that all eleven "Defendants" made the same wire transmissions on thirty-seven (37) separate occasions (FAC, ¶¶153), and that all eleven "Defendants" "made dunning telephone calls" to the Plaintiffs, without specifying the number of times that that allegedly took place.  *Id.*, ¶154.  Specifically, Plaintiffs allege that all eleven "Defendants": (i) made the same telephone calls to Plaintiff Bhagwanani on three (3) separate occasions; (ii) electronically collected the same money from Plaintiff Green on seventeen (17) occasions; (iii) electronically collected the same money from Plaintiff Murrell on four (4) separate occasions; (iv) accessed the same credit report relating to Plaintiff Marrou on three (3) separate occasions; (v) accessed the same credit report relating to Plaintiff Angermeir on nine (9) separate occasions; and (vi) sent the same faxes to Plaintiff Angermeir on two (2) separate occasions.  FAC, ¶¶153(a) – (kk).

Paragraphs 160 - 171 of the FAC also allege, implausibly, that all eleven "Defendants" filed the same papers with the New York City Civil Court on at least nine (9) separate occasions, and that that all eleven "Defendants" knew that the representations in those nine (9) filings were false.  Paragraph 172 of the FAC alleges that all eleven "Defendants" commenced legal actions against the Plaintiffs in the New York City Civil Court,[5] and that all eleven "Defendants" attempted to extort property from each Plaintiff.  Paragraph 177 alleges that all eleven

---

[4]     Typical of these allegations is paragraph 147(a), which alleges, "On or about November 10, 2009, Defendants in New York caused the mailing, through the use of interstate mails, of a summons and complaint to Mr. Angermeir in California."  That same allegation, with immaterial variations, is repeated thirty-eight times in paragraph 147.  The FAC fails to allege what role, if any, each Defendant played in any of these mailings. Paragraph 147(mm-oo) also lists three mailings made *by* Plaintiff Shabnam.

[5]     In accordance with Federal Rules of Evidence, § 201, the Court may take judicial notice of the actual filings in the New York City Civil Court, which are referred to in the FAC.  *Eaves*, 785 F.Supp.2d at 244.  Copies of the Summonses from the New York City Civil Court filings are annexed to the Lillienstein Dec. as Exhibits B-K.

"Defendants" obtained or attempted to obtain property from each Plaintiff. Paragraph 193 alleges that all eleven "Defendants" continue to file "perjurious affidavits," without specifying the affidavits to which they refer, or alleging what makes them "perjurious." Paragraph 186 alleges that "each Defendant" enabled, conducted, maintained, aided, and abetted the racketeering scheme" by drafting documents, supervising or concealing the scheme, and encouraging others to participate in the scheme. Tellingly, paragraph 187 of the FAC acknowledges that Plaintiffs are not aware of the "precise role played by each Defendant."

Although the FAC contains a formulaic recitation of one of the elements of a RICO cause of action - that "Plaintiffs have been injured in their business or property" by reason of Defendants' conduct (FAC, ¶188) - the more specific allegations of the FAC contradict this allegation. Plaintiffs allege that "none of the Plaintiffs had any commercial or other relationship with Defendants" (FAC, ¶198), that "Plaintiffs were ordinary citizens and as such, 'consumers' for purposes of consumer protection statutes" (*Id.*), that their damages consist of the "usual consequences of having derogatory entries made on their personal credit report" (*Id.*, ¶40, 60, 75, 88, 102, 110, 120, 129, 188 [emphasis original]), having to retain attorneys to defend against actions brought against them individually (*Id.*, ¶39, 48, 52, 59, 74, 83, 101, 109, 119, 128, 188), wasting "time and effort" (*Id.*, ¶¶40, 60, 75, 88, 102, 110, 120, 129, 188), and "annoyance, embarrassment, emotional distress, and mental anguish" (*Id.*). In addition, Plaintiffs allege that their consumer credit rating has been adversely affected. *Id.,* ¶188.

The FAC attempts to remedy the failure to properly allege injury to business or property by alleging that defendants made deductions from the *business* accounts of four of the Plaintiffs:

Greene (FAC, ¶¶153d-t), Murrell (*id.*, ¶153x-z), Bhagwanani (¶44) and Angermeir (¶31).[6]

However, the FAC makes clear that none of these deductions could have been the proximate

result of the allegedly "fraudulent lawsuits" that form the basis for the alleged scheme, because

the alleged deductions took place **before** any a lawsuit against these Plaintiffs was commenced.

<u>Argument</u>

I.

<u>LUMPING DEFENDANTS TOGETHER VIOLATES RULE 8(A)</u>

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009), the Supreme Court

set forth a "two-pronged approach" to evaluate the sufficiency of a complaint under Fed. R. Civ.

P. 8(a). "First, although a court must accept as true all of the allegations contained in a

complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*,

572 F.3d 66, 72 (2d Cir. 2009) (quotation marks and alterations omitted). Thus, a court

considering a motion to dismiss should "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After

identifying such pleadings, the Court next should determine whether the well-pleaded factual

allegations, assumed to be true, plausibly give rise to an entitlement to relief. *Hayden v.*

---

[6]     It is unclear from the FAC whether these "business" accounts were owned by the individual Plaintiffs, or by a separate business that is not a party to this action. If the latter, the individuals who are Plaintiff would clearly have no standing. *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (*quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)) ("[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.")(citation and internal quotation marks omitted). In this regard, it bears noting that the FAC alleges that business accounts belonging to Greene's and Elder's **mothers** were frozen, not that their own accounts were frozen. FAC, ¶100. The FAC makes no claim that Marrou, Shabnam or Glynn have any connection to a business.

*Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id., quoting Iqbal*, 556 U.S. at 678. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).

A claim is facially plausible only when "the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (emphasis added). When a pleading makes allegations that are equally consistent with lawful conduct as with unlawful conduct it "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557, *quoting DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). A court may also dismiss a claim as "factually frivolous" if the sufficiently well-pleaded facts are "clearly baseless" – that is, if they are "fanciful," "fantastic," or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S.Ct. 1728, 1733 (1992) (*quoting Neitzke v. Williams*, 490 U.S. 319, 325, 327, 328, 109 S.Ct. 1827, (1989)) (quotation marks omitted).

As the Second Circuit has held, Rule 8(a) does not permit a plaintiff to merely "lump [ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *See Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001). Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish between the conduct of each of the defendants. *Medina v. Bauer*, 2004 WL 136636 at *6 (S.D.N.Y. Jan 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong). *See also*; *Elias v. City of New York*, 2010 WL 5475809 at *3 (E.D.N.Y. Dec 30, 2010)

(dismissing complaint that failed to distinguish between the acts of defendants in an employment discrimination case); *Southerland v. New York City Housing Authority*, 2010 WL 4916935 at *3 (E.D.N.Y. Nov 23, 2010) (dismissing 42 U.S.C. §1983 complaint for failing to distinguish between acts of the defendants, in violation of Rule 8(a)); *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (applying *Atuahene* in the context of a civil rights complaint against multiple defendants).

In *Ochre LLC v. Rockwell Architecture Planning and Design, P.C.*, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), Judge Forrest of this Court recently dismissed a copyright infringement complaint with prejudice because the Plaintiff's amended complaint continued to lump all defendants together after first being warned that such pleadings violated Rule 8(a):

> Ochre lists a number of undifferentiated allegations in the SAC. For instance, the SAC alleges "defendants" gave an "express understanding" that Ochre would win the full purchase order (SAC ¶ 46); that "defendants" used "Ochre's design [s] ... to procure unlicensed copies or 'knockoffs' ", (SAC ¶ 84); and that "defendants ... have actually held out the chandeliers utilized at the Cosmopolitan as authentic Ochre creations in communications to the public, in response to inquiries and otherwise." (SAC ¶ 89.) . . . Such "lumping" of allegations is exactly what the Second Circuit warned against in *Atuahene* and *Simmons*; plaintiff cannot force the various defendants to guess at the nature of its claims. Plaintiff thus fails to allege plausible facts supporting its claim of a copyrightable design or conduct by each individual defendant constituting wrongful copying. As the Court previously gave plaintiff one final leave to amend its complaint, the copyright infringement cause of action against all defendants is DISMISSED WITH PREJUDICE.

*Id.* at *6-7.

For the same reasons that the second amended complaint in *Ochre* was dismissed with prejudice, the FAC in this action should also be dismissed with prejudice. Here, as in *Ochre*, the Plaintiffs were given an opportunity to correct the defects in their original pleading, after being notified that such defects violated Rule 8(a). Having failed to do so, the FAC should be dismissed with prejudice.

## II.

### LUMPING DEFENDANTS TOGETHER VIOLATES RULE 9(B)

Fed. R. Civ. P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Second Circuit has made it clear that civil RICO claims grounded in fraud are subject to the heightened pleading standard of Rule 9(b). *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (affirming the dismissal of an amended complaint because the allegedly fraudulent acts of which plaintiffs complained "were not pled with sufficient particularity"); *Lesavoy v. Gattullo-Wilson*, 170 Fed.Appx. 721, 723 (2d Cir. 2006) (affirming dismissal of RICO claim on the basis of Rule 9(b) because the predicate fraudulent acts were not sufficiently pled); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172-73 (2d Cir. 1990) (affirming the district court's dismissal of a fraud claim because the complaint did not specify the content, date, and place of any alleged misrepresentation and the identity of the persons making them). *See also*, *Lakonia Management Ltd. v. Meriwether*, 106 F.Supp.2d 540, 543 (S.D.N.Y. 2000) (RICO claims predicated on fraud dismissed for failure to meet the particularity requirement of Rule 9(b)).

Rule 9(b) does not allow Plaintiffs to lump multiple defendants together, as Plaintiffs do here, but instead requires Plaintiffs to differentiate their allegations to inform each defendant of the allegations surrounding his or her alleged acts. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (allegations which referred to misrepresentations by "Defendants" held insufficient under Rule 9(b)); *Eaves v. Designs for Finance, Inc.*, 785 F.Supp.2d 229, 248-249 (S.D.N.Y. 2011) ("[i]n order to comply with Rule 9(b) the complaint must…identify the speaker") (internal quotations omitted); *DLJ Mort. Capital Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 326 (E.D.N.Y. 2009) (dismissing the complaint where the Plaintiff "simply clumps together the more than 20 RICO defendants it sues and alleges, without any distinction among them, that all of these

defendants committed all of the enumerated acts"); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989) ("Plaintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against each Defendant through broad allegations which combine the acts of several Defendants").  Because the role of each Defendant in the alleged civil RICO scheme has not been pleaded in this case, the claim must be dismissed under Rule 9(b).  Simply put, "a plaintiff may not lump separate defendants together in vague and collective fraud allegations but must inform each defendant of the nature of his alleged participation in the fraud."  *Eaves*, 785 F. Supp. 2d at 247 (internal quotations omitted); *380544 Canada, Inc. v. Aspen Technology, Inc.*, 633 F.Supp.2d 15 (S.D.N.Y. 2009) (complaint that did not link each individual defendant to a specific fraudulent statement in any meaningful way did not comply with Rule 9(b)); *Brownstone Inv. Group, LLC. v. Levey*, 468 F.Supp.2d 654, 658-59 (S.D.N.Y. Jan 03, 2007).[7]

Here, there are virtually no allegations in the FAC that specify what role, if any, each of the eleven Defendants is alleged to have had in committing the RICO predicate acts that are alleged in the Complaint.  Although it is not necessary for a plaintiff to show that each defendant actually mailed or wired anything themselves, plaintiff must allege that each defendant directed the mailing or transmission and that the mailing or transmission was for the purpose of executing, or incidental to an essential part of, a scheme which itself has a fraudulent and deceptive purpose.  *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *See also Serin v. Northern Leasing Sys., Inc.*, 2009 WL 7823216 at *7 (S.D.N.Y. Dec. 18, 2009), *quoting City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008).  In this regard, all of the

---

[7]    Additionally, by failing to attribute fraudulent conduct to each defendant, the FAC not only "fails to give the … Defendants sufficient information to answer the [] complaint, but it also subjects them to vague, potentially damaging accusations of fraud, precisely what Rule 9(b) seeks to prevent." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 97 (D.D.C. 2010) (internal quotation marks omitted); *see also Bates v. Nw. Human Servs.*, *Inc.*, 466 F. Supp. 2d 69, 92 (D.D.C. 2006).

allegations of the FAC are implausible.  Paragraph 147 of the FAC alleges that all eleven

defendants either mailed or "caused the mailing" of the same thirty-eight (38) documents.

Likewise, paragraph 153 merely alleges that all eleven defendants engaged in the same use of

interstate wires on thirty-seven (37) occasions.  Other allegations compound the problem by

referring to unidentified "representatives" of the undifferentiated group of "Defendants."[8]  Under

*Iqbal*, these implausible allegations need not be accepted as true.

Because the FAC does not plausibly allege that each defendant engaged in acts of mail or

wire fraud, it does not comply with the requirements of Rule 9(b) and should be dismissed.

*Knoll v. Schectman,* 275 Fed. Appx. 50, 51 (2d Cir. 2008) (affirming dismissal of a RICO

Complaint because "the predicate acts of mail and wire fraud do not meet Rule 9(b)'s heightened

pleading standard); *Spool*, 520 F.3d at 185; *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822

F.2d 1242, 1247 (2d Cir. 1987) (dismissing the Complaint alleging fraud as to certain individual

defendants where the claims were "pleaded against the defendants generally, with little or no

specification as to individual roles"); *Hernandez v. Ballesteros*, 333 F.Supp.2d 6, 11 (D.P.R.

2004), *aff'd*, 449 F.3d 240 (1st  Cir. 2006), *cert denied* 127 S. Ct. 964 (2007) ("Plaintiff fails to

indicate which fraudulent statements were made by which Co-defendant, when such statements

were made, and whether those statements were made on the telephone or in person.  Other sister

districts have found that similarly pleaded allegations do not meet the standard for a RICO Act

claim under Rule 9(b). . . . We could not agree more"); *Appalachian Enters., Inc. v. ePayment*

*Solutions Ltd.*, 2004 U.S. Dist. LEXIS 24657 at *21 (S.D.N.Y. Dec. 18, 2004) (dismissing

plaintiff's complaint because "[t]he complaint in this case does not identify any particular

defendant that committed any specific act of wrongdoing against plaintiff.  Rather, the complaint

---

[8]        FAC, ¶¶30, 41, 50, 54, 56, 65.

simply attributes the wrongful acts as being committed collectively by the seventeen defendants"); *Medina v. Bauer*, 2004 U.S. Dist LEXIS 910 at *18 (S.D.N.Y. Jan. 26, 2004) (dismissing in part a RICO complaint because "[b]y lumping all the defendants together and failing to distinguish their conduct, plaintiff's [A]mended [C]omplaint fails to satisfy the requirements of Rule 8").[9]

## III.

### THE FAC DOES NOT ADEQUATELY ALLEGE THAT THE PLAINTFFS SUSTAINED DAMAGE TO THEIR BUSINESS OR PROPERTY BY REASON OF A RICO VIOLATION

**A.      Plaintiffs Have Not Alleged That They Have Sustained Damage To Their Business or Property**

RICO permits recovery only for injury to a plaintiff's business or property.  18 U.S.C. § 1964(c).   As the Second Circuit held in *Gotlin ex rel. County of Richmond v. Lederman*, 483 Fed.Appx. 583, 586 (2d Cir. 2012):

> "The words 'business or property' ... refer to commercial interests or enterprises. *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). Accordingly, "injuries [that] are personal in nature" do not constitute injury to "business or property" as those terms are used in RICO.   Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 241 (2d Cir.1999).*Gotlin ex rel. County of Richmond v. Lederman*, 483 Fed.Appx. 583 (2nd Cir. 2012).

It is well established that damages for personal injuries are not recoverable under civil RICO.  *Spinale v. United States et. al.*, 2004 WL 50873 at *10 (S.D.N.Y. Jan. 9, 2004) ("Courts have uniformly held that damages for personal injuries and emotional distress are not recoverable under RICO…. Thus, [plaintiff] cannot recover damages for any physical or emotional injuries he may have sustained as a result of the alleged RICO violations") (internal citations omitted); *Williams v. The Dow Chemical Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y.

---

[9]      Because Plaintiffs have already been given an opportunity to replead to correct this defect, the FAC should be dismissed with prejudice.  *380544 Canada,* 633 F.Supp.2d at 37.

2003) ("RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries"); *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 49 (E.D.N.Y. 2000) ("Congress enacted RICO to combat organized crime not to provide a federal cause of action and treble damages' for personal injuries") (internal quotations omitted).

Contrary to the FAC's conclusory allegation that "Plaintiffs have been injured in their business or property" (FAC, ¶188), the factual allegations in the FAC make clear that all of Plaintiffs' alleged damages are personal, and not business related. It alleges that Plaintiffs have "had to waste time and resources in responding to Defendants's [sic] dunning calls, threats, lawsuit in New York, retaining lawyers and incurring legal expenses therefor." *Id.* In addition, Plaintiffs allege that they sustained "the usual consequences" of having "derogatory entries" placed in their "personal consumer credit report[s]." FAC, ¶¶40, 52, 60, 75, 88, 102, 110, 120, 129. (emphasis in original). Even if true, the alleged damages are not to business or property, and cannot support a RICO claim. *Gotlin*, 483 Fed.Appx. at 586 ("plaintiffs' monetary losses were incidental to their personal injuries, and so cannot constitute injuries to 'property' as required to state a RICO claim").

**B.     Alleged Deductions From Plaintiffs' Business Bank Accounts Were Not Proximately Caused By The Alleged RICO Violation**

Section 1964(c) of Title 18 authorizes suit by "[a]ny person injured in his business or property ***by reason of*** a violation of § 1962." (Emphasis added). Thus, a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). This injury must be proximately caused by the predicate acts of the RICO violation. *Hollander v. Flash Dancers Topless Club*, 173 Fed.Appx. 15, 18 (2nd Cir. 2006), *cert. denied*, 549 U.S. 829, 127 S.Ct. 49, 166 L.Ed.2d 49 (2006)

("injuries caused not by the alleged racketeering violations . . . are not cognizable damages under RICO"), *citing Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir.2003).

The FAC alleges that deductions were made by the Defendants from the "business" bank accounts of four of the Plaintiffs: Greene (FAC, ¶¶153d-t), Murrell (*id.*, ¶153x-z), Bhagwanani (¶44), Angermeir (¶30) and Goyal (¶77).[10] However, it is apparent from other allegations in the FAC that these alleged deductions took place long before any RICO violation took place.[11] As such, they were not proximately caused by the alleged RICO violation, and Plaintiffs lack standing to recover these types of damages. *Hollander,* 173 Fed.Appx. at 18.[12]

---

[10]     The FAC makes no such claim on behalf of Marrou, Shabnam or Glynn, who allege no connection to any business.

[11]     The deductions from Greene's business bank account allegedly took place between March 1, 2005 and July 3, 2006. (FAC, ¶153d-t). The FAC alleges that Greene closed her restaurant and closed her business bank account in May 2006 (*id.*, ¶90) and that the Civil Court action against Greene was commenced in March 2007. *Id.*, ¶¶94-95. *See also* Lillienstein Dec., Exh. G.

Deductions were allegedly made from Murrel's business bank account between Nov. 1, 2010 and Jan. 2, 2011. *Id.*, ¶153x-z). The Civil Court action against Murrell was not commenced until Jan. 6, 2012. *Id.*, ¶117. *See* also Lillienstein Dec., Exh. I.

The FAC alleges that, "in order to stop the unauthorized deductions, Mr. Bhagwanani closed his business bank account." *Id.*, ¶44. That took place around December 2008. The allegedly fraudulent lawsuit was not commenced until September 2009. *Id.*, ¶47. *See also* Lillienstein Dec., Exh. C.

Electronic deductions were allegedly made from Angermeir's business bank account in or about October 2008. *Id.*, ¶30. The Civil Court action against Angermeir was allegedly commenced in November 2009. *Id.*, ¶147-a. *See also* Lillienstein Dec., Exh. B.

Goyal alleges that automatic deductions began shortly after August 2006. Although the FAC does not allege when the Civil Court action against Goyal was commenced, the Court may take judicial notice that it was commenced in August 2010. *See also* Lillienstein Dec., Exh. E.

[12]     The Court need not accept as true the formulaic allegation that Plaintiffs were injured in their business or property "as a direct and proximate result" of the alleged RICO violations. FAC, ¶188. *In re Am. Express Co. S'holders Litig.*, 39 F.3d 395, 400 n.3 (2d Cir.1994).

# IV.

## THE COMPLAINT DOES NOT ALLEGE PREDICATE ACTS OF EXTORTION

Other than mail and wire fraud, the only predicate act asserted in the Complaint purports to be extortion. FAC, ¶¶ 160-180. Plaintiffs allege that the filing of "bogus" lawsuits constitutes a violation of the Hobbs Act and New York's extortion statute, and that such violations are predicate acts for their RICO claims. *Id.* These allegations are insufficient to state a cause of action because the commencement of even "meritless litigation" does not amount to extortion under federal or state law. *Nakahara v. Bal*, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ("plaintiffs' allegations [that defendants filed baseless suits] constitute at most an incipient claim for malicious prosecution, and that, as such, those allegations fail as a matter of law to establish the requisite predicate acts for purposes of their asserted RICO claim").

The Hobbs Act states in relevant part: "Whoever in any way or degree obstructs, delays, or affects commerce... [by] extortion or attempts or conspires so to do... shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951. The act further defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear. .." *Id.* To prove extortion under the Hobbs Act, a "wrongful means and wrongful objective" must be proven. *Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205, 210 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2d Cir. 1991), *cert denied*, 112 S. Ct. 1244 (1992).

The linchpin of Plaintiffs' RICO claim here is that Defendants commenced or threatened baseless or fraudulent civil litigation. However, the "filing of ... a lawsuit - even if it were meritless and for the purpose of harassment - would not as matter of law constitute extortion under New York or federal extortion law because it does not involve threat of force, violence or fear, as required under both the N.Y. Penal Law § 155.05(2)(e) and the Hobbs Act, 18 U.S.C.

§1951." *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 173-74 (E.D.N.Y. 2010) *aff'd* 443 Fed. Appx. 582 (2d Cir. 2011); *Andrea Doreen Ltd. v. Building Material Local Union 282*, 299 F. Supp.2d 129, 149 (E.D.N.Y. 2004).[13]

As the District Court held in *Curtis & Associates,* 758 F.Supp.2d at 173-74:

> [A]llowing the federal RICO statute to usurp underlying legitimate state court litigation as proposed by plaintiffs here would inappropriately bypass the state tribunal where the action is pending and which properly controls that proceeding. Should plaintiffs' vague allegations of "phony" and "frivolous" litigation, "suborned perjury" and "deceit of court" have merit, plaintiffs' should direct such claims to the state courts where these acts are allegedly occurring and where the underlying litigation is still pending. This court flatly rejects plaintiffs' contention that "there is ... no remedy to be found in state courts merely by suing Bushman based on only one, or even several, of the seven underlying cases ...." [Citation omitted] Rather, this court has full confidence that the New York State courts where the underlying litigation is currently pending are fully competent to address any such wrongs and this court is unconvinced that such issues should be re-litigated in federal court under the guise of a RICO action. *See, e.g., Daddona*, 156 F.Supp.2d at 162 ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary.") (citation omitted); *see also Nakahara*, 1998 WL 35123, at *9, 1998 U.S. Dist. LEXIS 825, at *31 ("The claims of 'fraud' advanced here can be asserted as effectively, if not more so, in each of [the] ongoing [underlying] proceedings. Indeed, this RICO action adds nothing except the *in terrorem* effect of a treble damage claim and the expense of conducting litigation over these same issues in yet another forum.").

---

[13]     *See* also *Building Industry Fund v. Local Union No.3, Int'l Bhd. of Elec. Workers*, 992 F. Supp. 162, 176 n.9 (E.D.N.Y. 1996), *aff'd* 141 F. 3d 1151 (2d Cir. 1998) (filing of litigation was legitimate and not extortion);  *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) ("[t]hreats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion."); *Park South Assocs. v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986), *aff'd mem.*, 800 F.2d 1128 (2d Cir. 1986) (dismissing RICO action based on plaintiffs' allegations that defendant's allegedly meritless lawsuit constituted extortion under state law and the Hobbs Act); *DirecTV Inc. v. Lewis*, 2005 WL 1006030 at *5 (W.D.N.Y. Apr. 29, 2005) ("[t]hreats of litigation, even economically ruinous litigation, even unmeritorious litigation, do not constitute extortion") (citation omitted); *see also Park South Assocs.*, 626 F. Supp. 1108 at 1112 (dismissing RICO action based on plaintiff's allegations that defendant's allegedly bringing a meritless lawsuit constituted extortion under New York state law and the Hobbs Act).

Under the foregoing authorities, because Plaintiffs' extortion claims are based solely on Defendants' alleged commencement of allegedly unmeritorious litigation, the alleged predicate acts of extortion are insufficient as a matter of law, and the RICO counts should be dismissed to the extent that they rely on extortion as predicate acts.

## V.

## __PLAINTIFFS' RICO CONSPIRACY CLAIM MUST ALSO BE DISMISSED__

Plaintiffs' RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) must fail because the substantive RICO claim under Section 1962(c) fails, and because the Complaint's conclusory allegations of a conspiracy are insufficient. *Nat'l Group for Commc'n and Computers Ltd. v. Lucent Tech. Inc.*, 420 F.Supp.2d 253, 272 (S.D.N.Y. 2006).

There can be no RICO conspiracy without a substantive RICO violation. *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000), *cert. denied*, 121 S. Ct. 1228 (2001) ("If the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails") (citations omitted); *Lightning Lube, Inc. v. Witco Corp*, 4 F.3d 1153, 1191 (3d Cir. 1993). Thus, if "the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations. *Id.*; *see also Katzman*, 167 F.R.D. at 658 ("failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim [that the plaintiff] might assert arising under 1962(d)") (citation omitted). Accordingly, because plaintiffs have failed to plead a legally sufficient substantive RICO claim, their conspiracy claim also fails.

Under 18 U.S.C. §1962(d), a party is liable for a RICO conspiracy if it knew of the conspiracy's goals and agreed to facilitate them. *Salinas v. United States*, 522 U.S. 52, 65, 118 S. Ct. 469 (1997). To properly allege a conspiracy under § 1962(d) a plaintiff must assert that

"each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise…." *Allen v. New World Coffee, Inc.*, 2001 WL 293683, *9 (S.D.N.Y. Mar. 27, 2001) (citation omitted). Conclusory allegations that "[a]ll of the defendants conspired among themselves to further the scheme to defraud" and "knowingly and willingly participat[ed] in the conspiracy" are insufficient. *Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009), *quoting Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted) ("Broad allegations of conspiracy are insufficient; the plaintiff "'must provide some factual basis supporting a meeting of the minds….'"), *cert. denied*, 130 S.Ct. 3409, 177 L.Ed.2d 349 (2010); *Adler v. Berg Harmon Assocs.*, 790 F.Supp. 1222, 1234 (S.D.N.Y. 1992); *see also Laverpool v. N.Y.C. Transit Auth.*, 760 F.Supp. 1046, 1060 (E.D.N.Y. 1991) ("Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud") (citations omitted).

Here, the plaintiffs' allegations of conspiracy are entirely conclusory. FAC, ¶191. Plaintiffs have not even attempted to specify how each of the Individual Defendants "manifested an agreement to commit two predicate acts in furtherance of a common purpose of a RICO enterprise." To the contrary, they admit that they have no knowledge of "precise role played by each Defendant . . ." FAC, ¶187. Therefore, Plaintiffs' conspiracy claims under § 1962(d) should be dismissed whether or not a violation of §1962(c) has been adequately pleaded.

## VI.

### **PLAINTIFFS' SECTION 349(a) CLAIM SHOULD BE DISMISSED**

Section 349(a) of New York's General Business Law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in

this state are hereby declared unlawful," and a person injured by such acts may bring a civil action for damages. Section 349 is a consumer protection law, but has no application to the facts alleged in the FAC, because the conduct alleged, even if true, does not affect the public generally. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995). Indeed, when confronted with putative class claims involving some of the same defendants as in this case, the New York Supreme Court dismissed the claim, holding that the actions alleged involving four individuals "do not have a broad impact on the public at large. Plaintiffs . . . are therefore not protected under GBL §349. *Aldrich v. Northern Leasing Systems, Inc. et al.*, Index No. 602803/07, Decision/Order dated March 12, 2009, at pp. 10-12, 16 (Sup. Ct., N.Y. Co. filed Aug. 16, 2009) (Shulman, J.).[14]

This case involves the same type of private dispute, unique to the parties, as *Aldrich*, and does not fall within the ambit of section 349. *Anesthesia Associates of Mount Kisco, LLP v. Northern Westchester Hosp. Center*, 59 A.D.3d 473, 480, 873 N.Y.S.2d 679, 686 (2d Dept. 2009); *Oswego*, 85 N.Y.2d at 25. For that reason, the section 349 claim should be dismissed.

The section 349 claim should also be dismissed to the extent that Plaintiffs claim that their damage consists of deductions from Plaintiffs' out-of state bank accounts. Section 349 is a New York consumer protection statute that provides no relief to anyone who claims to have sustained damaged outside New York. *Goshen v. Mut. Life Ins. Co. of N.Y.,* 98 N.Y.2d 314 (2002). Although *Goshen* does not "function as *a per se* bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state" (*id.* at 325), it does make clear that GBL §349 "was not intended to police out-of-state transactions of New York companies." *Id.*

---

[14]     A copy of the decision in *Aldrich* is annexed to the Lillienstein Dec. as Exhibit K.

In *Goshen*, the New York Court of Appeals dismissed a Florida resident's claim under GBL §349 based on allegations that the "deceptive scheme [was] contrived and implemented" in New York, by defendants who had "extensive ties to New York and conducted business in the state." *Id.* at 321-22. In dismissing the GBL claims, the Court of Appeals held that an "allegedly deceptive scheme that originates in New York, but injures a consumer in a transaction outside the state" is not actionable under GBL §349, and that "'hatching a scheme' or originating a marketing campaign in New York [does not] in and of itself constitute an actionable deceptive act or practice under the statute. . ." *Id.* at 321, 324. Applying those principles, the Court held that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id.* at 325. See also *Kaufman v. Sirius XM Radio, Inc.,* No. 11-0121-cv, 2012 WL 1109397 (2d Cir. Apr. 4, 2012) (summary order) ("*Goshen* "forecloses" relief under GBL §349 in the absence of an "'intrastate transaction' that caused [plaintiff] harm.") *Id.* at *2.

In *Kaufman*, the plaintiffs included both New York and non-New York subscribers to Sirius' Satellite radio service. *Id.* at *1. The *Kaufman* plaintiffs alleged that Sirius improperly charged them administrative fees and "neither informed [them] of the nature of the charge nor offered a refund of the administration fees" even after Sirius itself realized the fee was improper. *Kaufman v. Sirius XM Radio, Inc.,* 751 F. Supp. 2d 681, 684 (S.D.N.Y. 2010), *aff'd* 2012 WL 1109397 (2d Cir. Apr. 4, 2012). To make out a claim that they were deceived in New York, the *Kaufman* plaintiffs alleged that "Sirius deceptively charged, collected and retained the [f]ee in New York" and "the deceptive transaction was consummated in New York when Sirius deceptively retained the [f]ee..." Appellants' Brief, *Kaufman v. Sirius XM Radio, Inc.,* 2011 WL 2178630 at *11-12. They also alleged a laundry-list of connections to New York, including allegations that Sirius (i) "directly invoiced and retained payment" of the allegedly improper fee

in New York, (ii) published the allegedly deceptive terms and conditions on a website controlled from New York, (iii) "formulated the scheme" in New York, and (iv) "collected, assimilated, and accounted" for the administrative fee from its corporate headquarters in New York. 2012 WL 1109397 at *2. Notwithstanding these connections to New York, the Second Circuit held that out of state consumers who were not deceived in New York could not obtain relief under GBL §349:

> Accepting plaintiffs' position would permit global coverage of GBL § 349 any time a New York corporation charged and retained an improper fee from non-New York consumers through use of deception. *Goshen* forecloses such a reading of GBL § 349.

*Id. See also*, *People ex rel. Spitzer v. Direct Revenue, LLC*, 19 Misc.3d 1124(A), 862 N.Y.S.2d 816, 2008 WL 1849855, *7 (Sup.Ct. N.Y.Co. Mar 12, 2008) ("where the deception is alleged to have affected consumers nationwide, it is not enough to allege merely that the defendant's principal place of business is in New York... or that defendant originated the overall scheme in the state."); *Berkman v. Robert's American Gourmet Food*, 2007 N.Y. Misc. LEXIS 4565, *6-7 (Sup.Ct. N.Y. Co. June 26, 2007); *Drizin v. Sprint Corp.*, 12 A.D.3d 245, 247, 785 N.Y.S.2d 428, 429-30 (1st Dep't 2004) ("Section 349 requires the deceptive transaction to have occurred in New York, leaving potential class members from outside the state, who were victimized by defendants' practices, with no viable claim under the statute") (*citing Goshen*).[15]

---

[15] Other federal courts in the Second Circuit agree that no cause of action exists under section 349 where the deception occurs outside New York. *See, e.g., Eaves,* 785 F. Supp. 2d at 267 n.30 (deception occurred in Colorado or Florida."); *Chiste v. Hotels.com L.P.,* 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (deception occurred in the state where plaintiffs used internet to make and pay for hotel reservations); *Siotkas v. Labone, Inc.,* Nos. 01-CV-6242 (SMG), 01-CV-6243 (SMG), slip op., 2009 WL 691967, at *2 (E.D.N.Y. Mar. 12, 2009) (deception occurred in Kansas and Georgia); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F. Supp. 2d 167, 203 n.19 (S.D.N.Y. 2009) *motion for reconsideration granted in part*, 642 F. Supp. 2d 206 (S.D.N.Y. 2000) (deception occurred in New Jersey); *Mayfield v. General Elec. Capital Corp.*, 1999 WL 182586 at *10 (S.D.N.Y. Mar 31, 1999) (deception occurred in Alabama).

None of the plaintiffs is a resident of New York.  FAC, ¶¶4-12.  Under *Goshen* and

*Kaufman* and the other authorities cited herein, the fact that any deception may have "originated"

or been "orchestrated" in New York "is irrelevant if the deception itself . . . did not result in a

transaction in which the consumer was harmed." *Goshen,* 98 N.Y.2d at 326.  Therefore, to the

extent that Plaintiffs claim that they were damaged when Defendants deducted money from their

"business accounts" outside of New York, their claims under section 349 should be dismissed.

*Direct Revenue,* 862 N.Y.S.2d 816, 2008 WL 1849855 at *7-8 (dismissing claims relating to out-

of-state transactions under GBL §§349 and 350).

## VII.

### GREEN'S CLAIMS ARE BARRED BY THE
### APPLICABLE STATUTES OF LIMITATIONS

The original Complaint in this action was filed in January 2012.  (dkt #1).  Any RICO

claims that arose prior to January 2008 are therefore barred by RICO's four year statute of

limitations.  *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct.

2759 (1987).  Any claims that arose prior to January 2009 are barred by the three year statute of

limitations applicable to claims under section 349.  *Avdon Capitol Corp. v. Nationwide Mut. Fire*

*Ins. Co.*, 240 A.D.2d 353 (2d Dept. 1997).  It is apparent from the Complaint that all of Plaintiff

Greene's claims arose at least four and one-half years prior to February 2012, when she learned

that she had been sued by Northern Leasing Systems.  *See* FAC, ¶95-96; *see also* Lillenstein

Dec., Exh. G.  As such, all of Greene's claims are barred by the applicable statutes of limitations.

**Conclusion**

For the foregoing reasons, the First Amended Complaint should be dismissed, with

prejudice and without leave to replead.

Dated: New York, New York
January 11, 2013

Respectfully submitted,

MOSES & SINGER LLP
*Attorneys for Defendants*

By: _____/s/_____
Robert D. Lillienstein, Esq.
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7807 (facsimile)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x

ARTHUR ANGERMEIR, NITESH BHAGWANANI,
BECKY D. GLYNN, LOUIS MARROU,
and SHIVA NANCY SHABNAM,

                                        Plaintiffs,

                    – against –                                    12 Civ. 0055 (KMK)

JAY COHEN, LEONARD MEZEI, SARA KRIEGER,
LOUIS CUCINOTTA, LEASE FINANCE GROUP,            **AFFIDAVIT OF SERVICE**
LLC, MBF LEASING LLC and NORTHERN LEASING
SYSTEMS, INC.,

                                        Defendants.

————————————————————————— x

STATE OF NEW YORK        )
                        ) ss.:
COUNTY OF NEW YORK       )

    Muyindeen Olajide, being duly sworn, deposes and says:  I am not a party to the
action, am over 18 years of age, and reside in the state of New York.

    On January 11, 2013, I delivered a copy of the attached **NOTICE OF MOTION,
MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT** and **DECLARATION OF
ROBERT D. LILLIENSTEIN IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT WITH EXHIBITS A-K**, upon:

            Krishnan Chittur, Esq.
            CHITTUR & ASSOCIATES, P.C.
            286 Madison Avenue, Suite 1100
            New York, New York 10017

by delivering a true copy thereof personally to each person named above at the address
indicated.  I knew each person served to be the person mentioned and described in said
papers as a party therein.

                                        _Muyindeen Olajide_
                                        Muyindeen Olajide

Sworn before me this
17th day of January, 2013

_____

968771v1 01082.0148

WHITNEY L. CULBREATH
Notary Public, State of New York
No. 01CU6062381
Qualified in New York County
Commission Expires Aug. 6, 2013