UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR ANGERMEIR, NITESH
BHAGWANANI, BECKY D. GLYNN,
LOUIS MARROU, DR. SHIVA NANCY
SHABNAM, KEN ELDER, RAJAT
GOYAL, KRISTINA GREENE, and
MARILYN MURRELL,

                              Plaintiffs,

            v.

JAY COHEN, LEONARD MEZEI, SARA
KRIEGER, LOUIS CUCINOTTA, LEASE
FINANCE GROUP, LLC, MBF LEASING
LLC, NORTHERN LEASING SYSTEM,
INC., JENNIFER CENTENO, RICARDO
BROWN, ROBERT TAYLOR, JOSEPH I.
SUSSMAN, and JOSEPH I. SUSSMAN,
P.C.,

                              Defendants.

No. 12-CV-55 (KMK)

OPINION AND ORDER

Appearances:

Krishnan Shanker Chittur, Esq.
Chittur & Associates, P.C.
New York, NY
*Counsel for Plaintiffs*

Robert D. Lillienstein, Esq.
Jordan Daniel Greenberger, Esq.
Scott Evan Silberfein, Esq.
Moses & Singer LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Arthur Angermeir ("Angermeir"), Nitesh Bhagwanani ("Bhagwanani"), Ken Elder

("Elder"), Becky D. Glynn ("Glynn"), Rajat Goyal ("Goyal"), Kristina Greene ("Greene"), Louis

Marrou ("Marrou"), Marilyn Murrell ("Murrell"), and Dr. Shiva Nancy Shabnam ("Shabnam") (collectively, "Plaintiffs") filed the instant Complaint against Jay Cohen ("Cohen"); Sara Krieger ("Krieger"); Jennifer Centeno ("Centeno"); Louis Cucinotta ("Cucinotta"); Ricardo Brown ("Brown"); Robert Taylor ("Taylor") (collectively, "Individual Defendants"); Joseph I. Sussman ("Sussman"); Joseph I. Sussman, P.C. ("Sussman, P.C.") (collectively, "Sussman Defendants"); Lease Finance Group, LLC ("LFG"); MBF Leasing LLC ("MBF"); and Northern Leasing Systems, Inc. ("NLS") (collectively, "Corporate Defendants") (with Individual Defendants and Sussman Defendants, collectively, "Defendants"), alleging one count of a violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), one count of conspiracy to violate RICO, 18 U.S.C. § 1964(d), and one count of a violation of New York's General Business Law § 349, N.Y. Gen. Bus. Law § 349.  (See Am. Compl. ("Compl.") (Dkt. No. 8).)  Before the Court is Defendants' Motion To Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  (See Mot. (Dkt. No. 14).)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Complaint and are taken as true for the purposes of resolving the instant Motion.  Defendant NLS is a New York corporation that has "employees, bank accounts, offices, office equipment, and other assets," and that "controls and services" various "pass through" entities, including Defendants MBF and LFG.  (Compl. ¶¶ 21–23.)  Each of the Individual Defendants is a "principal, an officer, and [a] controlling person" of the Corporate Defendants.  (Id. ¶¶ 13–18.)  Individual Defendants Cohen and Krieger are "masterminds" of an alleged "racketeering enterprise" ("Enterprise"), the former as President

and Chief Executive Officer of Defendant NLS, and the latter as Vice President of Operations for Defendant NLS and "some of the shell entities through which the Enterprise is conducted." (*Id.* ¶¶ 13–14.)  Individual Defendants Centeno, Cucinotta, Brown, and Taylor are each "active, wilful participants in the Enterprise" as, respectively, Legal Administrative Manager, Legal Collections Manager, Director of Legal Collections, and Legal Collections Manager for Corporate Defendants. (*Id.* ¶¶ 15–18.)  Defendant Sussman is an attorney, and Defendant Sussman, P.C., Sussman's law firm, is a New York Professional Corporation that shares offices and resources with the Corporate Defendants. (*Id.* ¶¶ 19–20.)  Sussman Defendants are "fully integrated with Defendants' operations" and are "wilful" and "active participant[s] in the Enterprise." (*Id.* ¶ 19.)

"Defendants are ostensibly engaged in the business of leasing small business equipment, mostly credit card processing machines." (*Id.* ¶ 24.)  But Defendants are also engaged in a "racketeering scheme to intimidate out of state individuals into paying unwarranted sums of money," (*id.* ¶ 1), which the Complaint describes as a "systematic and repeated . . . 'shakedown' effort . . . to bully [individuals] into paying the Enterprise monies to which the Enterprise was never entitled," (*id.* ¶ 25).  Specifically, the Complaint alleges that Defendants used equipment leases "[b]ased on forged documents, which Defendants knew were forged," to "intimidate Plaintiffs with dunning letters and phone calls" demanding payment pursuant to the terms of the fraudulent leases. (*Id.* (emphasis removed); *see also id.* ¶ 1 (alleging that "Defendants were aware . . . that the documents underlying [their] claims against Plaintiffs were forged").)  When Plaintiffs, none of whom lived in New York, contested the validity of the leases and refused to comply with Defendants' payment demands, Defendants would "harass, intimidate, and thereby extort money from Plaintiffs through threats of expensive long-distance litigation [in New York

state court], of damage to credit rating, and/or entry of default judgments." (*Id.* ¶ 1; *see also id.* ¶ 25 (alleging that Defendants "sought to intimidate Plaintiffs . . . [by] telling them that it would be more expensive for them to dispute the Enterprise's claims in New York City Civil Court than it would be to pay tribute to the Enterprise").)  When making these threats, Defendants "were well aware" that "[t]he relatively small amounts at issue would have . . . prevented these Plaintiffs from obtaining counsel or from otherwise developing their defense," given the "additional expenses and inconveniences of long-distance litigation." (*Id.* ¶ 26.)  Defendants' "scheme" was thus "designed to ensure that Plaintiffs had no real opportunity to raise defenses to the Enterprise's bogus lawsuits, so that the entry of a default judgment was all but certain." (*Id.*)

Although none of the Plaintiffs alleges that he or she succumbed to Defendants' threats and paid money directly to Defendants, all of them allege that Defendants filed fraudulent lawsuits against them in New York state court.  (*See id.* ¶¶ 37, 47, 58, 71, 82, 95, 108, 117, 122.) Five of the Plaintiffs allege that the lawsuits resulted in default judgments.  (*See id.* ¶¶ 38, 47, 58, 99, 123.)[1]  But all of the Plaintiffs allege that "Defendants . . . made derogatory entries in [their] personal consumer credit report[s]," that they "had to waste considerable time and effort" in dealing with these lawsuits, that they "retain[ed] attorneys and incurr[ed] legal expenses in New York," and that they were "subjected to considerable annoyance, embarrassment, emotional distress, and mental anguish." (*Id.* ¶¶ 40, 52, 60, 75, 88, 102, 110, 120, 129 (emphasis removed).)

---

[1] Plaintiffs Glynn, Marrou, and Murrell allege that they retained counsel and that their lawsuits have been stayed.  (Compl. ¶¶ 74, 109 n.4, 119 n.6.)  Plaintiff Goyal alleges that he retained counsel and that Defendants "withdrew their complaint" after he filed a motion to dismiss.  (*Id.* ¶ 87.)  Moreover, although Defendants obtained a default judgment against Bhagwanani, he alleges that he subsequently retained counsel, and that his counsel successfully moved the state court to vacate the judgment and dismiss the lawsuit.  (*Id.* ¶ 51.)

B.  Procedural History

Plaintiffs filed the initial Complaint in January 2012.  (*See* Dkt. No. 1.)  The Court held a pre-motion conference in June 2012 and set a briefing schedule for a motion to dismiss.  (*See* Dkt. No. 7.)  Before Defendants filed a motion, however, Plaintiffs filed an Amended Complaint in August 2012, alleging the same three counts as the original Complaint, adding four new plaintiffs and five new defendants, and dropping one defendant.[2]  (*See* Dkt. No. 8.)  The Court then held another pre-motion conference in November 2012 to discuss Defendants' renewed request to file a motion to dismiss.  (*See* Dkt. (minute entry for Nov. 20, 2012).)  Pursuant to the scheduling order entered after that conference, (*see* Dkt. No. 10), the Parties filed their papers in March 2013.  (*See* Mot.; Mem. of Law in Supp. of Defs.' Mot. To Dismiss the First Am. Compl. ("Mem.") (Dkt. No 16); Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Opp'n") (Dkt. No. 22); Reply Mem. of Law in Further Supp. of Defs.' Mot. To Dismiss the First Am. Compl. ("Reply") (Dkt. No. 17).)

## II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the

---

[2] The Amended Complaint added, as plaintiffs, Elder, Goyal, Greene, and Murrell, and, as defendants, Centeno, Brown, Taylor, and both Sussman Defendants, and it dropped, as a defendant, Leonard Mezei.  (*See* Compl.)

5

speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

B.  Analysis

Plaintiffs allege three counts in connection with Defendants' alleged fraudulent scheme. They bring two civil RICO claims under 18 U.S.C. § 1964(c), which establishes a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  First, Plaintiffs allege a violation of § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."  *Id.* § 1962(c).  (*See* Compl. ¶ 146.)  In this context, they allege four types of racketeering activity: mail fraud, in violation of 18 U.S.C. § 1341, (*see* Compl. ¶¶ 147–52), wire fraud, in violation of 18 U.S.C. § 1343, (*see id.* ¶¶ 153–59), federal-law extortion, in violation of 18 U.S.C. § 1951, (*see id.* ¶¶ 160–75); and state-law extortion, in violation of N.Y. Penal Law § 155.05, (*see id.* ¶¶ 176–80).[3]  Second, Plaintiffs allege a violation of § 1962(d), which makes it "unlawful for any person to conspire to violate [§ 1962(c)]."  18 U.S.C. § 1962(d).  (*See* Compl. ¶¶ 190–96.)  Finally, Plaintiffs bring a claim under New York's General Business Law § 349, which makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state."  N.Y. Gen. Bus. Law § 349(a); *see also id.* § 349(h) (establishing private right of action for violations of § 349(a)).  (*See* Compl. ¶¶ 197–201.)

---

[3] Although not at issue in this Motion, the Court notes that all of these types of activity satisfy the statute's definition of a "racketeering activity."  *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year," or "any act which is indictable" under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), or 1951 (extortion)); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("'Racketeering activity' is broadly defined to encompass a wide variety of state and federal offenses including . . . extortion."); *Chanayil v. Gulati*, 169 F.3d 168, 170 (2d Cir. 1999) ("Predicate acts for purposes of RICO include . . . mail fraud[ and] wire fraud . . . .").

Defendants move to dismiss the Complaint for multiple reasons.  First, they argue that the Complaint generally fails to meet the notice-pleading requirements of Rule 8(a) because it "lump[s] defendants together" and thereby fails "to distinguish between the conduct of each of the defendants."  (Mem. 7–9 (some alterations omitted).)  Second, they similarly argue that, where the Complaint alleges fraudulent acts, it fails to meet the "heightened pleading standard of Rule 9(b)" because it "lumps . . . defendants together" and thus "does not plausibly allege that each defendant engaged in acts of . . . fraud."  (*Id.* at 10–13.)  Third, they argue that Plaintiffs do not allege an "injury to business or property," as required to plead a claim under 18 U.S.C. § 1964(c).  (*See id.* at 13–15.)  Fourth, they argue that the Complaint "does not allege predicate acts of extortion," because "the commencement of even meritless litigation does not amount to extortion under federal or state law."  (*Id.* at 16–18 (internal quotation marks and alterations omitted).)  Fifth, they argue that Plaintiffs failed to plead a RICO conspiracy claim because their "allegations of conspiracy are entirely conclusory."  (*Id.* at 18–19.)  Sixth, they argue that Plaintiffs fail to plead a claim under New York's General Business Law § 349 because that statute does not provide a remedy for Plaintiffs' alleged injuries resulting from business-account deductions that occurred outside of New York.  (*See id.* at 19–23.)  Finally, they argue that Plaintiff Greene's claims are time-barred.  (*See id.* at 23.)  The Court will address each argument in turn.

### 1.  Rule 8(a)

Defendants first argue that the Complaint fails to meet Rule 8(a)'s notice-pleading standard, which requires, *inter alia*, that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Defendants cite a number of cases standing for the proposition that, "[w]here a complaint names

multiple defendants, that complaint must provide a plausible factual basis to distinguish between the conduct of each of the defendants." (Mem. 8–9 (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012); *Elias v. City of New York*, No. 10-CV-5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010); *Southerland v. N.Y.C. Housing Auth.*, No. 10-CV-5243, 2010 WL 4916935 (E.D.N.Y. Nov. 23, 2010); *Medina v. Bauer*, No. 02-CV-8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)).)[4]  In most of the cases Defendants cite, the court dismissed the complaint because it failed to distinguish *at all* between any of the Defendants in claims alleging discrimination or constitutional-rights violations.  *See, e.g.*, *Marcilis*, 693 F.3d at 596 (dismissing a complaint raising a *Bivens* claim where the complaint "ma[de] *only* categorical references to 'Defendants'" (emphasis added)); *Atuahene*, 10 F. App'x at 34 (noting that the complaint "alleging a host of constitutional and state common law claims" initially "failed to differentiate among the defendants, alleging instead violations by 'the defendants,'" and then later "still fail[ed] to identify which defendants were alleged to be responsible for which alleged violations" when the plaintiff "replaced the allegations against 'the defendants' with the names of all of the defendants"); *Elias*, 2010 WL 5475809, at *3 (dismissing complaint that "attribute[d] discrimination, retaliation, and disparate treatment generally to 'Defendants,' without distinguishing their individualized conduct" (internal citation omitted)); *Southerland*, 2010 WL 4916935, at *3 (dismissing complaint alleging constitutional-rights violations where the

---

[4] Defendants cite *Atuahene v. City of Harford*, a Second Circuit summary order from 2001.  The Court notes that, under the Local Rules for the Court of Appeals for the Second Circuit, summary orders do not have precedential effect, and parties may not cite a summary order issued prior to January 1, 2007, except in two circumstances, neither of which is present here.  *See* 2d Cir. R. 32.1.1(a), (b)(2).

complaint failed "[to] allege facts against *any* individual defendant" (emphasis added)).  In one case, the court dismissed a copyright-infringement claim where the plaintiff sued four entirely separate entities—a design firm, an architect, a hotel, and a procurement agent—and the complaint "fail[ed] to isolate the key allegations against each defendant."  *See Ochre*, 2012 WL 6082387, at *6.  And in the lone case addressing a RICO claim, the court dismissed the RICO claim against three of the defendants because the complaint contained only one allegation specific to each defendant, and each allegation "fail[ed] to give adequate notice to th[o]se defendants as to what they did wrong."  *See Medina*, 2004 WL 136636, at *6.

Defendants argue that, like the courts in those cases, this Court should dismiss the Complaint because it fails to "provide a plausible factual basis to distinguish between the conduct of each of the defendants."  (Mem. 8.)  But Defendants mischaracterize the Complaint. Unlike the complaints in each of the cases Defendants cite, this Complaint contains numerous allegations specific to each of the Defendants.  For example, it generally alleges that Sussman "commences and conducts all of the litigation in the New York City Civil Court on behalf of the Enterprise," (*see* Compl. ¶ 138; *id.* ¶¶ 143–44), and it specifically alleges that the Sussman Defendants filed all of the allegedly fraudulent lawsuits against Plaintiffs, (*see id.* ¶¶ 37, 47, 58, 71, 82, 95, 108, 117, 122), and that they caused the mailing of legal documents to many of the Plaintiffs, (*see id.* ¶¶ 147(o), 147(p), 147(y)).  For each of the nine Plaintiffs, it alleges facts supporting a plausible inference as to which Corporate Defendant injured the Plaintiff.  (*See id.* ¶¶ 30–40, 53–75, 161, 163–64 (factual allegations involving Defendant MBF and Plaintiffs Angermeir, Elder, and Glynn); *id.* ¶¶ 41–60, 76–120, 147(z), 162, 165, 167–68 (factual allegations involving Defendant NLS and Plaintiffs Bhagwanani, Elder, Goyal, Greene, Marrou, and Murrell); *id.* ¶¶ 121–29, 169 (factual allegations involving Defendant LFG and Plaintiff

Shabnam).)  And it specifically alleges the role each Individual Defendant played in the scheme. (*See id.* ¶¶ 13, 133 (alleging that Cohen was President and CEO of NLS, and that he "was in charge of all its day-to-day operations"); *id.* ¶¶ 14, 95, 134 (alleging that Krieger was the Vice President of Operations for NLS, that she verified complaints filed by Sussman Defendants, and that "[s]he was responsible for several aspects of [the Enterprise's] day-to-day operations, lease originations, and sales"); *id.* ¶¶ 15, 37, 47, 58, 82, 108, 118, 122, 147(h) (alleging that Centeno was a Legal Administrative Manager, that she verified and notarized complaints filed by Sussman Defendants, and that she mailed a copy of a summons and complaint to Plaintiff Elder); *id.* ¶¶ 16, 37, 47, 122, 135 (alleging that Cucinotta was a Legal Collections Manager, that he verified complaints filed by Sussman Defendants, and that he "was responsible for collection aspects of the Enterprise"); *id.* ¶¶ 17, 49, 85, 136 (alleging that Brown was a Director of Legal Collections, that he verified complaints filed by Sussman Defendants, and that he submitted false affidavits and a false audio recording to a New York state court); *id.* ¶¶ 18, 58, 82, 108, 137 (alleging that Taylor was a Legal Collections Manager and that he verified complaints filed by Sussman Defendants).)

Plaintiffs' Complaint therefore does not simply "lump" Defendants together, as Defendants argue.  Instead, it "satisfies the requirements of Rule 8(a) because it gives [Defendants] fair notice of the basis for [Plaintiffs'] claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("[Rule 8(a)(2)] requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (internal quotation marks and alterations omitted)); *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (noting that "[t]he key to Rule

8(a)'s requirements is whether adequate notice is given," and that "fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial" (internal quotation marks omitted)).  And it does so even though it includes certain allegations against "Defendants" collectively.  *See Hudak v. Berkley Grp., Inc.*, No. 13-CV-89, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014) ("Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."); *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 WL 3487032, at *7 (S.D.N.Y. July 9, 2013) ("In order to comply with Rule 8, [a] complaint should offer specification as to the particular activities by any particular defendant . . . .  Rule 8(a) . . . requires that a complaint against multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." (internal quotation marks and citations omitted) (alterations in original)), *adopted by* 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013); *Howard v. Municipal Credit Union*, No. 05-CV-7488, 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each [d]efendant on notice of what they allegedly did or did not do." (some internal quotation marks and citations omitted) (alteration in original)).  The Court therefore denies Defendants' Motion To Dismiss under Rule 8(a).

### 2.  Rule 9(b)

Defendants next argue that the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard, which requires Plaintiffs "alleging fraud" to "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  In the context of a civil RICO claim, "all

allegations of fraudulent predicate acts[] are subject to the heightened pleading requirement of [Rule 9(b)]." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).  This includes allegations of predicate acts of mail and wire fraud.  *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (holding that the plaintiff's mail and wire fraud allegations were not "pled with the requisite particularity" under Rule 9(b)).  But Rule 9(b), notably, does not govern allegations of § 349 violations, extortion, and RICO conspiracy, which are subject only to the more liberal notice-pleading requirements of Rule 8. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under [N.Y. Gen. Bus. Law] § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." (internal citations omitted)); *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (holding that "the more lenient pleading standards" of Rule 8(a) apply to claims of extortion alleged as RICO predicate acts); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy.  [A] pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a).").

"The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted).  In general, "[p]laintiffs must plead . . . mail [or wire] fraud with particularity, and establish that the [communications] were in furtherance of a fraudulent scheme." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).  This normally requires that "[a]llegations of predicate mail and wire fraud acts . . . state the contents of the

communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Spool*, 520 F.3d at 185 (internal quotation marks omitted) (third and fourth alterations in original).  However, courts in the Second Circuit have applied a different standard in cases where "[a] plaintiff claims that . . . mails or wires were simply used in furtherance of a master plan to defraud," but does not allege that "the communications [themselves] . . . contained false or misleading information." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998).  In such cases, including "complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." *Id.*  Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Id.*; *see also Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) ("[I]n cases where plaintiffs allege that the mails or wires were simply used in furtherance of a master plan to defraud, . . . . particularity as to the mailings themselves is unnecessary . . . ." (internal quotation marks and citations omitted)); *Serin v. N. Leasing Sys., Inc.*, No. 06-CV-1625, 2009 WL 7823216, at *7 (S.D.N.Y. Dec. 18, 2009) ("In applying Rule 9(b) to predicate acts of mail or wire fraud, Southern District of New York courts have articulated different requirements to apply in . . . [the] 'in furtherance of fraud' context." (citing *In re Sumitomo Copper*, 995 F. Supp. at 456)); *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 442 (S.D.N.Y. 2008) ("Allegations said to be in furtherance of fraud are held to a different pleading standard entirely."); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624 (S.D.N.Y. 2006) ("[W]here the plaintiff claims that the mail or wires were simply used in furtherance of a scheme to defraud,

the complaint need not be specific as to each allegation of mail or wire fraud as long as the

nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants."

(internal quotation marks omitted)); *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995)

("Once the plaintiff alleges with particularity the circumstances constituting the fraudulent

scheme, neither the reputational interests nor the notice function served by Rule 9(b) would be

advanced in any material way by insisting that a complaint contain a list of letters or telephone

calls."); *cf. Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) ("To be part of the execution

of [a] fraud . . . the use of the mails need not be an essential element of the scheme.  It is

sufficient for the mailing to be incident to an essential part of the scheme or a step in the plot."

(internal quotation marks, citations, and alterations omitted)).  As one court has explained,

> [t]he rationale for this approach is twofold: one, mailings made only in
> furtherance of a scheme are not technically allegations of fraud within the
> meaning of Rule 9(b); and two, the very purpose of applying Rule 9(b) to
> mailings in furtherance of the scheme is obviated where a plaintiff alleges the
> wider scheme with the requisite particularity.

*Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 88 (E.D.N.Y. 2011).

Here, Plaintiffs allege an overall scheme to defraud individuals based on forged leases

and fraudulent litigation resulting in default judgments.  (*See* Compl. ¶ 1 ("This action arises out

of Defendants' racketeering scheme to intimidate out of state individuals into paying

unwarranted sums of money by commencing fraudulent lawsuits in New York City Civil Court

for relatively small sums of money . . . .").)  In arguing that the Complaint fails to satisfy Rule

9(b), Defendants do not challenge the sufficiency of the allegations as to the nature of the

scheme.  (*See* Reply 3 n.1 (commenting on a section of Plaintiffs' Memorandum of Law

"address[ing] the requirements of pleading a fraudulent RICO scheme with particularity, an

argument that Defendants do not make in this case")).  Instead, they contend that the Complaint

is insufficient "[b]ecause the role of each Defendant in the alleged civil RICO scheme has not been pleaded." (Mem. 11.)

   "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent [acts] to 'defendants.'").  Rule 9(b) does not require Plaintiffs to allege a "specific connection between fraudulent representations . . . and particular defendants . . . where . . . defendants are insiders or affiliates participating in the [allegedly fraudulent conduct] in question." *DiVittorio*, 822 F.2d at 1247 (internal quotation marks omitted) (quoting *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986)).  However, a bare allegation of an individual defendant's affiliation with entities allegedly committing fraudulent acts is not enough to satisfy Rule 9(b).  *See id.* at 1248–49 (noting that a complaint's identification of certain defendants "only as an affiliate" of other defendants were "inadequate to charge [those] defendants with liability for misrepresentations"); *see also Mills*, 12 F.3d at 1175 ("The mere fact that the Directors were controlling persons . . . does not link them to the [fraudulent acts] . . . ."); *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990) (holding that an allegation that one defendant was an "affiliate" of another defendant "alone [was] insufficient to link [the defendant] to the misrepresentations").  At a minimum, therefore, Plaintiffs must "allege that the [each Defendant] *personally* knew of, or participated in, the fraud." *Mills*, 12 F.3d at 1175 (emphasis in original); *see also Potter v. Retail Automation Prods., Inc.*, No. 13-CV-4506, 2014 WL 494521, at *2 (S.D.N.Y. Feb. 5, 2014) ("Where allegations of fraud involve multiple defendants, the complaint must set forth allegations specifically attributable to each

16

individual defendant."); *Pullman v. Alpha Media Pub., Inc.*, No. 12-CV-1924, 2013 WL 1290409, at *23 (S.D.N.Y. Jan. 11, 2013) (dismissing complaint under Rule 9(b) because plaintiff "[did] not specifically connect [a defendant] to the fraud in [the] complaint's recitation of the allegations for fraud," but instead made specific allegations with respect to certain defendants and otherwise "refer[red] to 'defendants' in general"), *adopted by* 2013 WL 1286144 (S.D.N.Y. Mar. 28, 2013); *DeFazio v. Wallis*, No. 05-CV-5712, 2006 WL 4005577, at *2 (E.D.N.Y. Dec. 9, 2006) ("Where there are multiple defendants, Rule 9(b) requires that the plaintiffs allege facts specifying each defendant's contribution to the fraud."); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) ("When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant."); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Where multiple defendants are involved, the complaint is required to describe specifically each defendant's alleged participation in the fraud."). Ultimately, the Court determines whether the Complaint's allegations are

> sufficiently particular to serve the three goals of Rule 9(b), which are (1) to provide a defendant with fair notice of the claims against him or her; (2) to protect a defendant from harm to reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits.

*Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05-CV-8988, 2007 WL 1732427, at *6 (S.D.N.Y. June 14, 2007) (internal quotation marks omitted) (citing *DiVittorio*, 822 F.2d at 1247)).

The Complaint's allegations of mail and wire fraud satisfy Rule 9(b) as to each Defendant. The Court has already discussed various allegations specific to each Defendant that are sufficient to give Defendants fair notice of the claims against them under Rule 8(a). However, the Complaint goes further and includes multiple allegations specific to each

Defendant that satisfies Rule 9(b)'s requirement that Plaintiffs allege each Defendant's knowledge of or participation in the fraudulent scheme.  First, the Complaint alleges that Sussman, and by extension the Sussman Firm, has obtained default judgments while "routinely disregard[ing]" and "affirmatively conceal[ing]" the existence of a 2005 New York state court order allegedly undermining Defendants' legal claim to the judgments.  (*See* Compl. ¶¶ 1, 19.) Based on the 2005 order, the Complaint alleges that "Sussman Defendants knew at least since 2005 that judges in the New York City Civil Court had refused to exercise jurisdiction in New York over the lawsuits brought by the Enterprise, and that commencing such boilerplate lawsuits here were . . . attempts to deprive Plaintiffs and others of their day in court," but that "Sussman Defendants have [nevertheless] commenced and continued to commence these lawsuits in New York City Civil Court, presumably in the hopes of default judgments, without informing that Court in such subsequent lawsuits of these precedents refusing jurisdiction."  (*Id.* ¶¶ 143–44.)  It also specifically alleges that Sussman Defendants used "interstate mails" to "cause[] the mailing" of letters and legal documents to Plaintiffs Goyal and Greene.  (*Id.* ¶¶ 147(o)–(p), (y).)

Second, the Complaint specifically alleges that Individual Defendants Cohen and Krieger and Corporate Defendant NLS knew about and participated in the alleged fraud because, "the scheme at issue has continued despite several racketeering and class actions in various courts throughout the country impugning Defendants' deceptive business practices over the past several years."  (*Id.* ¶¶ 140–41 (citing *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184 (N.Y. 2008)).) In one case in particular, these Defendants were accused of perpetrating "a nationwide scheme that took place over a number of years" and that involved allegations of fraud in connection with Defendants' small-business-machine-leasing business.  *See Pludeman*, 890 N.E.2d at 185–86,

188.  The Complaint also alleges that "[e]ach Defendant knew, or should have known, of all these legal proceedings, and the decisions therein."  (Compl. ¶ 145.)

Third, contrary to Defendants' argument that "there are virtually no allegations in the [Complaint] that specify what role, if any, each of the eleven Defendants is alleged to have had in committing the RICO predicate acts that are alleged in the Complaint," (Mem. 11), the Complaint does specify each Defendant's role in the scheme.  As discussed, the Complaint pleads each Individual Defendant's job title, which is much more specific than pleading a mere "affiliation."  *See DiVittorio*, 822 F.2d at 1248–49 (dismissing complaint under Rule 9(b) where the complaint identified certain defendants "only as an affiliate" and did not "even allege[] [them] to have been an officer or director of any non-individual [corporate] defendant").  And it specifically alleges that Defendant Cohen was "in charge of all [of NLS's] day-to-day operations" and that he "set up, orchestrated, and supervised the entire racketeering scheme at issue," (Compl. ¶ 133); that Defendant Krieger "was responsible for several aspects of [the Enterprise's] day-to-day operations, lease originations, and sales," and "routinely verified most of the fraudulent complaints," (*id.* ¶¶ 14, 134), including one filed against Plaintiff Greene, (*id.* ¶ 95); that Defendant Centeno was a "Legal Administrative Manager for the Defendants" who verified and notarized a number of fraudulent complaints, (*id.* ¶ 15), including ones filed against Plaintiffs Angermeir, Bhagwanani, Elder, Goyal, Marrou, Murrell, and Shabnam, (*id.* ¶¶ 37, 47, 58, 82, 108, 118, 122), and who personally "mailed a copy of [a] summons and complaint" to Plaintiff Elder, (*id.* ¶ 147(h)); that Defendant Cucinotta was a "Legal Collections Manager for the Defendants" who "was responsible for collection aspects of the Enterprise" and who "routinely verified many fraudulent complaints," (*id.* ¶¶ 16, 135), including ones filed against Plaintiffs Angermeir, Bhagwanani, and Shabnam, (*id.* ¶¶ 37, 47, 122); that Defendant Brown was

19

a "Director of Legal Collections" who also verified fraudulent complaints, (*id.* ¶ 17, 136), and who submitted false affidavits in connection with the allegedly fraudulent lawsuits against Plaintiffs Bhagwanani and Goyal, (*id.* ¶¶ 49–50, 85–86); and that Defendant Taylor was a "Legal Collections Manager" who also verified fraudulent complaints, (*id.* ¶¶ 18, 137), including ones filed against Plaintiffs Elder, Goyal, and Marrou, (*id.* ¶¶ 58, 82, 108).

Defendants argue that the Complaint implausibly alleges "that all eleven defendants either mailed or 'caused the mailing' of the same [38] documents" and that all Defendants "engaged in the same use of interstate wires on [37] occasions." (Mem. 12.)  Defendants are correct that the Complaint alleges numerous times that "Defendants" caused a particular mailing to a particular Plaintiff on a particular date, and that it makes numerous similar allegations with respect to "use of interstate wire communication[s]."  (*See* Compl. ¶¶ 147(a)–(oo), 153(a)–(kk).)  However, "in the context of a RICO action, the complaint need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants."  *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 264 (E.D.N.Y. 2011) (internal quotation marks omitted).  Instead, it need allege only that each defendant "directly participated in the scheme and could reasonably foresee that the mails would be used in furtherance of the same."  *Rothstein v. GMAC Mortg., LLC*, No. 12-CV-3412, 2013 WL 5437648, at *16 (S.D.N.Y. Sept. 30, 2013); *see also In re Sumitomo Copper Litig.*, 995 F. Supp. at 456 ("In complex civil RICO actions involving multiple defendants . . . Rule 9(b) does not require that the temporal geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity.  In such cases, Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." (internal

citation and footnote omitted)).  Here, the Complaint plausibly alleges that each Defendant

"directly participated in the scheme," and because the scheme involved multiple communications

with individuals outside of New York, each participant could "reasonably foresee" that mails and

interstate wires "would be used in furtherance" of the scheme.  *Rothstein*, 2013 WL 5437648, at

*16; *see also United States v. Amico*, 486 F.3d 764, 781 (2d Cir. 2007) ("To prove that a

defendant caused a mailing, it is sufficient to prove that he could have reasonably foreseen that

the mailing would take place."); *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 76

(E.D.N.Y. 2006) (noting that even "[t]he fact that a third party may have caused the use of the

mails does not render the pleading defective, so long as the defendants could reasonably have

foreseen that the third-party would use the mails in the ordinary course of business as a result of

defendants' act" (internal quotation marks omitted)).  Furthermore, while Defendants are correct

that the Complaint contains a number of allegations against all Defendants in general, the

Complaint's other allegations specific to each Defendant are sufficient to give Defendants fair

notice of the claims against them and to accomplish the other goals of Rule 9(b).  *See GEM

Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 332 n.9 (S.D.N.Y. 2009)

("Although the [complaint] repeatedly charge[d] the [fraudulent acts] to 'Defendants,' and [did]

not charge the [acts] to one in particular, this was simply due to [p]laintiff's understanding that

[the defendants] should be treated as the same entity.  At this stage of the proceedings, then,

[p]laintiff fairly charge[d] both [d]efendants with the [acts].  Accordingly, there can be no doubt

that the [c]omplaint [gave] each defendant notice of precisely what he [was] charged with.  No

more is required by Rule 9(b)."  (internal citations and some internal quotation marks omitted));

*Green v. Beer*, No. 06-CV-4156, 2009 WL 911015, at *6 n.13 (S.D.N.Y. Mar. 31, 2009)

("[E]lsewhere in the . . . complaint, Plaintiffs specify the who, what, when, and where of their

fraud claim with sufficient particularity to cure any confusion these scattered clumped allegations may cause."); *Allstate Ins. Co. v. Ahmed Halima*, No. 06-CV-1316, 2009 WL 750199, at *5 (E.D.N.Y. Mar. 19, 2009) (finding that, because "requiring [p]laintiffs to plead with more particularity would not further any of the policy goals of Rule 9(b)," the plaintiffs "properly pled a civil RICO claim under § 1964(c)").

In holding that the Complaint satisfies Rule 9(b)'s heightened pleading requirements, this Court agrees with Judge Gwin's ruling in a similar case brought against Defendants NLS, Cohen, and Krieger.  In *Serin v. Northern Leasing Systems, Inc.*, No. 06-CV-1625, 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009), the plaintiffs alleged that the defendants "engaged in a pattern of racketeering activity by extorting money from the [p]laintiffs by threatening and initiating lawsuits against them in New York City to recover on fraudulent leases."  *Id.* at *6.  The defendants argued that the Complaint's allegations of predicate acts of mail and wire fraud failed to satisfy Rule 9(b).  *Id.* at *4, 6.  Judge Gwin rejected the defendants' argument, finding that allegations in that complaint similar to Plaintiffs' allegations in this Complaint met Rule 9(b)'s heightened pleading standard:

> The [p]laintiffs in this case do not allege that the letters and/or wire transmissions themselves contained misrepresentations.  Rather, the [p]laintiffs argue that the communications are part of an ongoing scheme by the [d]efendants to defraud them.  The [p]laintiffs describe with the required amount of particularity the details of the racketeering scheme: they describe in detail how the [d]efendants allegedly forged leases in each [p]laintiff's name; how the [d]efendants made electronic deductions from the bank accounts of [certain plaintiffs]; how the [d]efendants then called and/or mailed letters to each [p]laintiff demanding payment on the leases and threatening litigation if the [p]laintiffs refused to pay; how the [d]efendants initiated litigation in New York City Civil Court against [certain Plaintiffs]; how these [p]laintiffs personally appeared and defended these allegedly meritless lawsuits; and how the [d]efendants allegedly made adverse entries in all of the [p]laintiffs' personal credit reports.  The general allegations of mail fraud in . . . the [complaint], when read in the context of the specific allegations the [p]laintiffs ma[d]e earlier in the [complaint], are sufficient to adequately plead mail fraud.

> Moreover, it is also unnecessary for the [p]laintiffs to allege that each of the individual [d]efendants personally committed at least two of the predicate acts of mail and/or wire fraud.  It is sufficient that the [p]laintiffs allege that the individuals committed the predicate acts of mail and wire fraud by directing NLS and its employees to use the mails and/or wires to further the fraudulent scheme. Because the [complaint] alleges that the individual [d]efendants, by nature of their positions within [NLS], orchestrated, supervised, monitored, and/or oversaw the day-to-day operations of the alleged scheme, the Plaintiffs' allegations against all of the [d]efendants are sufficient to allege a pattern of racketeering activity for purposes of RICO.  Based upon the information contained in the [complaint], the [p]laintiffs have adequately met their pleading requirement with respect to their mail and wire fraud claims under Rule 9(b).

*Serin*, 2009 WL 7823216, at *8 (internal citations omitted) (citing *Pereira v. United States*, 347 U.S. 1, 8–9 (1954); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2d Cir. 2008), *rev'd on other grounds*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010); *In re Sumitomo Copper Litig.*, 995 F. Supp. at 457)).  Here, the Court similarly finds that Plaintiffs' allegations of Defendants' use of the mails and wires satisfies their obligation under Rule 9(b) to plead a fraudulent scheme with particularity, and that, combined with Plaintiffs' specific allegations against each Defendant, the Complaint gives Defendants fair notice as to Plaintiffs' claims against them.

### 3.  Injury to Business or Property

Defendants next contend that the Complaint fails to plead an "injur[y] [to] business or property by reason of a" predicate act of racketeering activity, as required for any claim brought under § 1964(c).  *See* 18 U.S.C. § 1964(c); *Lundy*, 711 F.3d at 119 ("To establish a civil RICO claim, a plaintiff must allege . . . injury to business or property as a result of the RICO violation.'" (internal quotation marks omitted)).

In general, monetary damages constitute an "injury to . . . property."  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (noting that "[t]he

general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket losses

caused by the fraud," and that this rule "has been adopted by [the Second Circuit] in the context

of deciding whether a defrauded plaintiff has standing under RICO"); *Bankers Trust Co. v.*

*Rhoades*, 741 F.2d 511, 516 (2d Cir. 1984) ("[The plaintiff] has alleged that it has been deprived

of various sums of money by the defendants' activities.  There is no question that this constituted

injury in its business or property, and that [the plaintiff] has adequately pleaded an injury of the

type contemplated by § 1964(c)." (internal quotation marks and alterations omitted)), *vacated*

*and remanded on other grounds*, 473 U.S. 922 (1985).  However, "[i]t is beyond dispute that

personal injuries are not injuries to 'business or property.'"  *Zimmerman v. Poly Prep Country*

*Day Sch.*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012); *see also Laborers Local 17 Health &*

*Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 241 (2d Cir. 1999) (finding that "RICO causes

of action could not be asserted by the [plaintiffs] . . . because the RICO statutes requires an

injury to 'business or property,' whereas the [plaintiffs'] injuries are personal in nature").

　　　　Defendants are correct that many of the injuries alleged in the Complaint do not

constitute an "injury" within the meaning of § 1964(c).  For example, each of the Plaintiffs

claims that he or she "had to waste considerable time and effort" in response to the fraudulent

lawsuits, and that he or she "was subjected to considerable annoyance, embarrassment,

emotional distress, and mental anguish."  (*See* Compl. ¶¶ 40, 52, 60, 75, 88, 102, 110, 120, 129.)

None of these constitutes an "injury" under § 1964(c).  *See Gross v. Waywell*, 628 F. Supp. 2d

475, 488 (S.D.N.Y. 2009) (noting that "personal or emotional damages do not qualify" as

"injur[ies] to business or property" (internal quotation marks omitted)); *Williams v. Dow Chem.*

*Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("RICO . . . does not provide recovery for

physical and emotional injuries."); *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368

(S.D.N.Y. 1998) ("[M]ere injury to character, business reputation, and/or the intentional infliction of emotional distress are not actionable under civil RICO.").  Each Plaintiff also alleges that "Defendants . . . made derogatory entries in [his or her] *personal* consumer credit report," and that he or she "suffered the usual consequences of such adverse reports."  (*See* Compl. ¶¶ 40, 52, 60, 75, 88, 102, 110, 120, 129.)  But an adverse entry in a personal consumer credit report, by itself, does not constitute an injury to business or property.  *See Summerfield v. Strategic Lending Corp.*, No. 09-CV-2609, 2010 WL 1337726, at *2–3 (N.D. Cal. Apr. 2, 2010) (holding that the a plaintiff had "failed to establish that [he had] standing to assert a RICO claim" where he claimed "damage[] . . . [to] his credit score") (report and recommendation); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) ("Injury to one's credit score is analogous to injury to one's reputation, and is not actionable [under RICO].").  And although Plaintiffs have generally alleged that adverse credit-report entries *may* lead to a "significant impact on credit availability to Plaintiffs, including . . . denial of credit opportunities, increase in interest rates, and other diverse consequences," (Compl. ¶ 28), Plaintiffs' credit-report allegations do not constitute an injury under § 1964(c) because none of the Plaintiffs has alleged that he or she has actually suffered such an injury.  *See Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-01, 2008 WL 4594129, at *4 (S.D. Miss. Oct. 14, 2008) ("[D]amage to [a] plaintiff's credit score . . . is speculative and not properly recoverable in the instant [civil RICO] action."); *cf. First Nationwide Bank*, 27 F.3d at 768 ("Because plaintiff's collection efforts were ongoing and the actual amount of its injury was indefinite and unprovable, plaintiff did not yet have standing under RICO."); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d

486, 521 (S.D.N.Y. 2007) ("If the damages cannot be ascertained, then there is no lawful way to compensate plaintiff.").[5]

But the Court does not dismiss the Complaint on this ground because the Plaintiffs do allege a sufficient injury to business or property to the extent that they allege monetary losses in the form of legal fees they had to pay in response to Defendants' allegedly fraudulent lawsuits. (*See* Compl. ¶¶ 39, 48, 59, 74, 83, 101, 109, 119, 128.)  As many courts have found, such damages may constitute injuries to business or property under § 1964(c) so long as they were "proximately caused by a RICO violation."  *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (finding legal fees spent in response to defendants' illegal actions to be RICO injuries because "legal fees may constitute RICO damages when they are proximately caused by a RICO violation"); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (allowing recovery of "an unspecified amount in legal fees and other expenses incurred in fighting defendants' frivolous lawsuits in New York state court"); *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 253 & n.130 (S.D.N.Y. 2012) ("[Plaintiff] more than sufficiently has alleged at least that it has sustained substantial attorneys' fees and professional costs in responding to defendants' allegedly fraudulent statements to U.S. courts . . . ."); *Sykes v. Mel Harris & Assoc., LLC*, 757 F. Supp. 2d 413, 427–28 (S.D.N.Y. 2010) ("[D]efendants' pursuit of default judgments and attempts to enforce them against plaintiffs proximately caused their injures, which include the . . . incurring of legal costs to challenge those default judgments." (internal citation omitted)); *Ritter v. Klisivitch*, No. 06-CV-5511, 2008 WL 2967627, at *8

---

[5] The one case Plaintiffs cite for the proposition that adverse credit-report entries "indisputably . . . may result in monetary damages" addressed claims brought under the Fair Debt Collections Practices Act and a related Connecticut law, and although the plaintiff in that case alleged that she suffered monetary damages, the court did not address that issue.  (*See* Opp'n 19 (citing *Walsh v. Law Offices of Howard Lee Schiff*, No.11-CV-1111, 2012 WL 4372251 (D. Conn. Sept. 24, 2012)).)

(holding that "legal fees and other expenses incurred" as a result of defendant's alleged RICO

violations constituted a RICO injury); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218

F. Supp. 2d 369, 382 (S.D.N.Y. 2002) (finding attorneys' fees and expenses incurred in

connection with fraudulent legal proceedings to be sufficient RICO injuries), *aff'd*, 385 F.3d 159

(2d Cir. 2004).  The Court therefore finds that Plaintiffs have sufficiently pled an "injury to . . .

property by reason of" a RICO violation.[6]

### 4.  Extortion

Defendants next argue that the Complaint fails to allege predicate acts of extortion

because "the commencement of even 'meritless litigation' does not amount to extortion under

federal or state law."  (Mem. 16.)  The Court need not address this argument at this time,

however, because even if Defendants were correct, Plaintiffs' independent allegations of mail

and wire fraud—which Defendants do not directly challenge in their Motion—are enough to

satisfy Plaintiffs' burden to plead predicate acts.  *See Serin*, 2009 WL 7823216, at *9 ("Because

the Court finds that the Plaintiffs have adequately pleaded a pattern of racketeering in which the

alleged enterprise committed multiple predicate acts of mail and/or wire fraud in further[ance] of

---

[6] The Court notes that five of the Plaintiffs—Angermeir, Bhagwanani, Elder, Goyal, and Murrell—allege that Defendants made unauthorized deductions from their business bank accounts.  (*See* Compl. ¶¶ 31, 43, 55, 77, 113.)  But the Court does not consider these to satisfy Plaintiffs' burden to plead an injury to business or property because Plaintiffs concede that these injuries did not result from the alleged RICO violations.  (*See* Mem. 15 (arguing that the "alleged deductions took place long before any RICO violation took place," and, therefore, "they were not proximately caused by the alleged RICO violation"); Opp'n 18–20 (arguing only that Plaintiffs suffered RICO damages from "legal expenses" resulting from "Defendants' fraudulent lawsuits" and "monetary damages" from "adverse entries in credit reports").)  For the same reason, the Court does not consider as possible RICO injuries the allegations of three of the Plaintiffs— Bhagwanani, Elder, and Greene—that Defendants' actions resulted in the freezing of a bank account.  (*See* Compl. ¶¶ 48, 58, 100.)  Moreover, the Court notes that two of those Plaintiffs— Elder and Greene—alleged only that Defendants froze bank accounts controlled by a third party. (*See id.* ¶¶ 58, 100.)

its allegedly fraudulent and extortionate scheme, it finds that it is not necessary to consider

whether the filing of lawsuits could itself be considered a predicate act of extortion for RICO

purposes."); *Mezzonen, S.A. v. Wright*, No. 97-CV-9380, 1999 WL 1037866, at *9 (S.D.N.Y.

Nov. 16, 1999) (finding plaintiff's allegations of mail and wire fraud "sufficient to uphold [a]

RICO claim against [defendants]," and consequently noting that it "need not analyze the

allegations of money laundering").

### 5. Conspiracy

Defendants next argue that the Complaint fails to plead a RICO conspiracy claim under

18 U.S.C. § 1962(d), (*see* Mem. 18–19), which makes it "unlawful for any person to conspire to

violate any of the provisions of [§ 1962(c)]," 18 U.S.C. § 1962(d).  To the extent that Defendants

base this argument on their challenges to the substantive RICO claim under § 1962(c), (*see*

Mem. 18 ("[B]ecause plaintiffs have failed to plead a legally sufficient substantive RICO claim,

their conspiracy claim also fails.")), this argument fails because the Court has declined to dismiss

the substantive RICO claim.  *See SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 81

(E.D.N.Y. 2006) ("Because the court holds that Plaintiff has properly alleged a RICO claim, the

court denies the motion to dismiss the conspiracy claim.").  But Defendants also argue that

"[P]laintiffs' allegations of conspiracy are entirely conclusory" because they "have not even

attempted to specify how each of the Individual Defendants 'manifested an agreement to commit

two predicate acts in furtherance of a common purpose of a RICO enterprise.'"  (Mem. 19

(quoting *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2001 WL 293683, at *9 (S.D.N.Y.

Mar. 27, 2001)).)  This challenge also fails.

"To establish a RICO conspiracy, a plaintiff must plead that a defendant agreed to

participate in the affairs of the enterprise through a pattern of racketeering activity."  *N.Y. Dist.*

*Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 282 (S.D.N.Y. 2013).  In

doing so, a defendant need not agree specifically to commit at least two predicate acts; instead, a

defendant may violate § 1962(d) if he or she "commit[s] at least two acts of racketeering

activity" and "knew about and agreed to facilitate the scheme."  *Salinas v. United States*, 522

U.S. 52, 66 (1997); *accord United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008) ("*Salinas*

held that to be found guilty of RICO conspiracy, a defendant need only know of, and agree to,

the general criminal objective of a jointly undertaken scheme." (citing *Salinas*, 522 U.S. at 63));

*United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000) ("To be convicted as a conspirator,

one must be shown to have possessed knowledge of only the general contours of the

conspiracy.").  Therefore, Plaintiffs "must allege some factual basis for a finding of a conscious

agreement among the defendants."  *Picard v. Kohn*, 907 F. Supp. 2d 392, 400 (S.D.N.Y. 2012)

(quoting *Hecht*, 897 F.2d at 26 n.4)).  But "a defendant's agreement to join a conspiracy can be

inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of

wrongdoing."  *N.Y. Dist. Council of Carpenters Pension Fund*, 939 F. Supp. 2d at 282 (internal

quotation marks omitted).  And the Court analyzes the Complaint's allegations of a § 1962(d)

conspiracy under the "more liberal pleading requirements of Rule 8(a)."  *Hecht*, 897 F.2d at 26

n.4.

   Here, the Complaint satisfies this standard.  Although Plaintiffs do allege, in somewhat

conclusory fashion, that "Defendants . . . knowingly agreed and conspired to conduct or

participate . . . in the affairs of an enterprise," (Compl. ¶ 191), they also allege facts that support

an inference that such an agreement did exist.  *See U.S. Fire Ins. Co. v. United Limousine Serv.,*

*Inc.*, 303 F. Supp. 2d 432, 454 (S.D.N.Y. 2004) (denying motion to dismiss RICO conspiracy

claim where "conclusory statements [in the complaint] [were] buttressed by . . . more specific

allegations").  For example, the Complaint alleges that each Defendant committed at least two

predicate acts "with the knowledge that [those acts] were in furtherance of [a] pattern of

racketeering activity."  (*Id.* ¶ 192.)  The Court has already held that Plaintiffs have alleged such

knowledge with respect to Defendants NLS, Cohen, and Krieger, all of whom were defendants in

multiple lawsuits filed in federal and state courts and involving allegations of fraud similar to

those made in the Complaint.  The Complaint therefore also supports a plausible inference that

the other Defendants were aware of the overall scheme and understood that they were taking

actions in furtherance of that scheme.  *See De Sole v. Knoedler Gallery, LLC*, — F. Supp. 2d —,

2013 WL 5452669, at *25 (S.D.N.Y. Sept. 30, 2013) (denying motion to dismiss a RICO

conspiracy claim where the complaint "pled facts demonstrating . . . that each of the individual

defendants, by nature of their positions in the alleged racketeering enterprise, knew of the

general nature of the conspiracy and facilitated the furtherance of the conspiracy"); *Crabhouse of

Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 90 (E.D.N.Y. 2011) (denying motion to

dismiss RICO conspiracy claim where the plaintiff alleged that each defendant "agreed to

participate in a scheme whose ultimate objective must have been known to its participants, or so

a jury could reasonably conclude," and where one defendant, "who operated solely at the behest

of his superiors, would have known that the purpose behind his task" was to further the

fraudulent scheme); *Metro. Transp. Auth. v. Contini*, No. 04-CV-104, 2005 WL 1565524, at *5

(E.D.N.Y. July 6, 2005) (denying motion to dismiss RICO conspiracy claim where the plaintiff

"alleged [an individual defendant] to have been in charge of the day-to-day operations of [a

corporate defendant]," such that the individual was alleged to be "a sufficiently high level

employee to impute knowledge of the wrongdoing on [the corporate defendant]"); *State Farm

Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 151 (E.D.N.Y. 2005)

(denying motion to dismiss conspiracy claim against defendants whom plaintiffs alleged to have played a "'support' role . . . in furtherance of the pattern of racketeering activity," including mailing fraudulent documents).  Moreover, the Complaint alleges that "Defendants have . . . continued filing . . . perjurious affidavits under oath" even after these lawsuits were filed, (Compl. ¶ 193), and it specifically alleges a number of such false filings with respect to each Plaintiff, (*id.* ¶¶ 37, 47, 58, 71, 82, 85–86, 95, 108, 117, 122, 161–72).  Finally, the Complaint alleges that each Defendant benefitted financially from the scheme in the form of profits and income derived directly from their participation in the scheme.  (*See id.* ¶¶ 184 ("Defendants benefitted enormously by the profits they made from the scheme, and the various amounts collected unlawfully."), 185 ("Defendants received income from these patterns [of racketeering activity] in the form of unwarranted payments.  Defendants disbursed these funds amongst themselves in a manner known only to them."); *see also id.* ¶¶ 13–18 (alleging that each Individual Defendant has "received, and continues to receive, income directly and/or indirectly from the racketeering Enterprise at issue"); *id.* ¶ 19 (alleging that Sussman has "received, and continues to receive, a portion of the amounts collected by the Enterprise"); *id.* ¶ 24 ("Each of the Individual Defendants has personally profited . . . from [the alleged] activities.").)  This supports an inference that Defendants knowingly participated in the conspiracy.  *See United States v. Heras*, 609 F.3d 101, 111 (2d Cir. 2010) (holding that "anticipated compensation" based on the possible "achievement of [a] . . . scheme" may "support[] a jury inference that a defendant knows and has adopted the conspiracy's goals"); *United States v. Aleskerova*, 300 F.3d 286, 292–93 (2d Cir. 2002) ("A defendant's knowing and willing participation in a conspiracy may be inferred from . . . . evidence that the defendant . . . received or expected to receive a share of the profits from the conspiracy.").  The Court therefore denies Defendants' Motion To

Dismiss the conspiracy claim. *See Serin*, 2009 WL 7823216, at *14 ("The [p]laintiffs allege that the [d]efendants conspired with others to commit predicate acts of mail fraud in furtherance of their scheme to extort money from the [p]laintiffs; that each of the individual [d]efendants, by nature of their positions at [NLS], knew of the general nature of the conspiracy and facilitated the furtherance of the conspiracy; and that none of the [d]efendants have withdrawn or otherwise dissociated themselves from the conspiracy or the other conspirators.  Furthermore, the knowledge of [d]efendants Cohen . . . and Krieger can be imputed to the corporate entity they allegedly controlled and utilized to further the conspiracy, [d]efendant NLS.  Thus the Plaintiffs have sufficiently alleged their RICO conspiracy claim against all of the [d]efendants under the liberal pleadings requirements of Rule 8(a) . . . ." (citation omitted)).

### 6.  Section 349

New York's General Business Law § 349(a) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  N.Y. Gen. Bus. Law § 349(a).  New York courts have held that, "[t]o successfully assert a [§ 349] claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *accord Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010).  Plaintiffs' § 349 claim arises out of their allegations that Defendants "nonchalantly misused the court system of the State of New York and the City of New York, and routinely made false and baseless statements with reckless abandon, . . . even after knowing the falsity of such statements."  (Compl. ¶ 199.)  This "misuse" of the court system results in injury cognizable under § 349, they argue, because "[l]itigants depend on the integrity of the conduct of

participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability," and because "concoct[ing] testimony [and] mak[ing] false statements under oath . . . is an unacceptable fraud on the court."  (*Id.*)

   "As a threshold matter, in order to satisfy [§ 349], plaintiffs' claims must be predicated on a deceptive act or practice that is 'consumer oriented.'"  *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999).  To be "consumer oriented," the alleged conduct "must have a broad impact on consumers at large."  *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995).  Section 349, therefore, requires that the conduct bear some relationship to consumer transactions.  *See N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 102 (App. Div. 2012) ("The requirement that the consumer-oriented conduct be materially misleading limits the availability of [§ 349] to cases where the deception pertains to an issue that may bear on a consumer's decision to participate in a particular transaction.  As such, the statute is limited in its application to those acts or practices which undermine a consumer's ability to evaluate his or her market options and to make a free and intelligent choice.").  And it does not apply to private disputes between individual parties with no bearing on the overall marketplace. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) ("Private contract disputes, unique to the parties . . . would not fall within the ambit of [§ 349]."); *see also Richmond v. Nat'l Grid, Brooklyn Union Gas Co.*, — F. App'x —, 2014 WL 322063, at *2 (2d Cir. Jan. 30, 2014) ("[Plaintiff] allege[d] . . . that [defendant] acted improperly only with respect to [plaintiff].  Accordingly, [plaintiff] failed to plead a claim under [§ 349]." (internal citations omitted)).

   Here, Plaintiffs have failed to plead conduct related to consumer transactions, and they have failed to plead conduct that impacts consumers at large.  In pleading this claim, the

Complaint itself characterizes Defendants' conduct as a "fraud on the court."  (Compl. ¶ 199.)
And although it does plead, in conclusory fashion, that Plaintiffs are "'consumers' for purposes
of consumer protection statutes," it does not plead injuries arising out of a *consumer-oriented
transaction*.  (*Id.* ¶ 198.)  In fact, the Complaint appears to plead the opposite of what § 349
requires when it alleges that "[n]one of the Plaintiffs had any commercial or other relationship
with Defendants."  (*Id.*)  In any event, the Court finds that Plaintiffs' allegations concerning
"false statements" and "fraud on the court[s]" fail to plead a consumer-oriented conduct.  *See
Schlessinger v. Valspar Corp.*, 991 N.E.2d 190, 193 (N.Y. 2013) ("Section 349 does not grant a
private remedy for every improper or illegal business practice, but only for conduct that tends to
deceive consumers."); *cf. City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 456 (2d
Cir. 2008) ("[W]e are aware of no case extending protection under [§ 349[ to an entity that was
neither harmed as a competitor nor a consumer.").

Moreover, Plaintiffs have failed to plead that Defendants' conduct affects consumers in
general or the public at large.  *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264
(2d Cir. 1995) ("[T]he gravamen of [a § 349 claim] must be consumer injury or harm to the
public interest.").  Plaintiffs' allegations primarily concern injuries they sustained from the
allegedly fraudulent lawsuits Defendants filed against them individually.  *See Silverman v.
Household Fin. Realty Corp. of N.Y.*, — F. Supp. 2d —, 2013 WL 4039381, at *3 (E.D.N.Y.
Aug. 5, 2013) (dismissing § 349 claim because "[p]laintiffs' allegations [were] specific to them
and their individual . . . transaction," such that "[t]heir claims derive[d] from the particular
circumstances of [an individual] loan," and "the allegedly deceptive practices . . . [did] not
universally apply to other [transactions] or impact the public at large").  And although Plaintiffs
refer to "[l]itigants" in the abstract and "integrity . . . in civil proceedings" in general, (Compl.

¶ 199), these allegations are based entirely on Plaintiffs' individual claims.  *See Wilson*, 625 F.3d at 65 (affirming summary judgment dismissing a § 349 claim where plaintiff "argue[d] that [defendant's] conduct would have a direct effect on consumers at large," but the argument was "based on [plaintiff's] claim that [defendant] breached . . . the policies as they were applicable to [an individual] situation—not that [defendant] ha[d] a policy of issuing policies that are deceptive").  The Court therefore finds that Plaintiffs have failed to plead a claim under New York's General Business Law § 349, and it grants Defendants' Motion To Dismiss that claim.[7]

### 7.  Plaintiff Greene's Claims

Defendants finally argue that Plaintiff Greene's RICO claims are barred by the statute of limitations.  The statute of limitations for such claims is four years.  *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) ("The statute of limitations for a civil RICO claim is four years.").  Moreover, to determine whether a civil RICO claim is timely, courts in the Second Circuit apply "a discovery accrual rule, under which the limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury."  *Id.* (internal quotation marks omitted).  But the Second Circuit has also recognized a "separate accrual rule" whereby "a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations."  *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995).  As a result, "[a]s long as separate and independent injuries continue to flow from the underlying RICO violations—regardless of when those violations occurred—[a] plaintiff may wait indefinitely to sue, but may then win compensation

---

[7] Because the Court has dismissed Plaintiffs' claim in the entirety, it need not consider Defendants' separate argument that Plaintiffs' allegations of unauthorized bank-account deductions are not cognizable under § 349 because they occurred outside of New York.  (*See* Mem. at 20–23.)

only for injuries discovered or discoverable within the four-year 'window' before suit was filed
. . . ." *Id.* at 560.

Plaintiffs filed their initial Complaint in January 2012. (*See* Dkt. No. 1.) Defendants are
therefore correct that "[a]ny RICO claims that arose [four years] prior to" filing the Complaint
would be time barred. (Mem. 23.) And Plaintiff Greene does allege that Defendants
fraudulently sued her over four years prior to the filing of the Complaint. (*See* Compl. ¶¶ 95,
99–100 (alleging that Defendants obtained a default judgment against her "[a]bout [four-and-a-
half years]" before February 2012).) However, Defendants are incorrect when they argue that
"all of Plaintiff Greene's claims arose . . . when she learned that she had been sued by [NLS]."
(Mem. 23.) Even if Defendants sued Greene more than four years before she brought her claim,
it is the RICO *injury* that triggers the accrual, not the RICO *violation*. *See Bankers Trust*, 859
F.2d at 1105 ("[E]ach time plaintiff discovers or should have discovered an injury caused by
defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when
the actual violation occurred."). In this context, the Court has already held that legal expenses
can constitute a RICO injury, and Greene alleges that she incurred such expenses at some point
after February 2012. (*See* Compl. ¶¶ 99–101 (alleging that Defendants obtained a default
judgment against Greene, that they subsequently froze her mother's bank account in February
2012, and that Greene thereafter "had to retain a lawyer and incur legal expenses in New York to
vacate the default judgment").) Under the separate accrual rule, therefore, her claims for those
damages are not time-barred. *See Bankers Trust*, 859 F.2d at 1105 (holding, "[u]nder [the] rule
of separate accrual," and in the context of the plaintiff's claim for "past legal fees and other
expenses," that the plaintiff "may recover any of these expenses which it discovered or should

have discovered" within four years of bringing the action).  The Court therefore denies

Defendants' Motion To Dismiss Greene's RICO claims.[8]

III.  Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motion To Dismiss in

part and denies it in part.  It thus dismisses Plaintiffs' § 349 claim, but it does not dismiss either

of Plaintiffs' civil RICO claims brought under 18 U.S.C. § 1964(c).  The Clerk of Court is

respectfully requested to terminate the pending Motion.  (Dkt. No. 14.)

SO ORDERED.

DATED:      March 27, 2014
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court has already dismissed Greene's § 349 claim on alternate grounds, it
need not address Defendant's argument that it should dismiss her § 349 claim as time-barred.
(*See* Mem. 23.)