# *Chittur & Associates, P.C.*

Attorneys & Counselors at law
Central Westchester Business Park
500 Executive Boulevard Suite 305
Ossining, New York 10562
Tel: (914) 944-4400 Fax: (914) 840-8537
Web: www.chittur.com  Email: kchittur@chittur.com

June 14, 2015

Hon. Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York  10007

    Re:    *Angermeir v Cohen,* 12 CV 0055
                *Ritchie v. Northern Leasing*, 12 CV 4992

Your Honor:

**With utmost reluctance, we respectfully request, on behalf of all Plaintiffs (except Angermeir), that Your Honor (a) recuse yourself from further proceedings in this case on grounds that "a reasonable person, knowing all the facts, would conclude that the … judge's impartiality could reasonably be questioned." *Jemzura v. Public Service Com'n*, 961 F.Supp. 406, 410 (N.D.N.Y.1997) (internal quotation marks and citations omitted); and (b) transfer these two cases (including the sanctions motions) to Judge Roman, who is handling another similar matter, <u>Aghaeepour v. Northern Leasing</u>, 14 CV 5449 (NAR), or to another judge of this Court.**

<u>The Applicable Law</u>

> The question of recusal on grounds of bias or prejudice is "to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994).  Thus, in the Second Circuit, "the appropriate standard is objective reasonableness-whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (*quoting Diamondstone v. Macaluso*, 148 F.3d 113, 121 (2d

1

>Cir.1998); *accord, e.g., ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir.2012).

*Wallen v. Teknavo Grp.*, 2014 WL 7370011, at *1 (E.D.N.Y. Dec. 29, 2014). Thus, recusal is appropriate "when the opinions formed by a … judge display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id. (citing Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir.1995) (internal quotation marks omitted)). *Accord, Walker v. LaValley*, 2014 WL 2442811, at *2 (N.D.N.Y. May 30, 2014). Under these standards, recusal is warranted here.

The Court's Conduct And Orders in this Case Give the Appearance of Bias

It is Defendants, not Plaintiffs, who have wilfully withheld and refused to produce critical information from the inception of discovery, despite specific court orders. But nevertheless, as detailed below, it would appear that Your Honor has turned a blind eye to Defendants' infractions while indulging in a systematic course of conduct giving rise to an appearance of bias against Plaintiffs and/or me.

First, on March 25, 2015, Your Honor issued an order scheduling a conference for April 3, 2015. At that time, I was already in India attending to my ailing mother, and I had only sporadic access to the internet. On March 26, 2015, my associate informed Your Honor of this, and, with Defendants' consent, requested an adjournment. Your Honor granted that adjournment, but immediately (March 27, 2015) entered another order that we notify Your Honor of all pending discovery disputes by the same day. Believing that this was an oversight, we once again requested an extension of time specifically to submit this report on behalf of Plaintiffs. Shockingly, Your Honor denied that request. Dkt. 96. In my 38 years as a member of the Bar in many jurisdictions, in U.S. and elsewhere, I have had occasion to appear before hundreds of judges. I have not come across (or even *heard* about) a single judge in any jurisdiction denying a week's extension for submission of a status report where the extension is sought because counsel in charge is out of the country.

Second, Defendants submitted their "status report" on March 27. As stated, I was in India without access to the files and documents here, had only sporadic access to internet, and could not responsibly submit a status report. Nevertheless, Your Honor promptly entered an order requiring Plaintiffs to produce several categories of documents within one week, and even imposed sanctions upon Mr. Angermeir. Dkt. 98. Much of the documents ordered had nothing whatsoever to do with the issues in this case, but Your Honor did not even bother giving Plaintiffs an opportunity to address Defendants' status report.

Third, it is well-settled law and practice that "This Court has an obligation to safeguard the virtually sacrosanct privacy of the attorney-client privilege…," *Bowling v. Hasbro, Inc.,* 582 F.Supp.2d 192, 211 (D.R.I.2008). *Accord, Southern Scrap Material Co. v. Fleming,* No. 01–CV–2554, 2003 WL 21783318, at *1 (E.D.La. July 30, 2003)

2

("The confidential relationship between lawyer and client is sacrosanct and one of the bastions of [ ] ordered liberty."). Nevertheless, Your Honor ordered us to produce to the Court <u>all</u> of Plaintiffs' attorney-client communication, Dkt. 98. <u>It would appear that Your Honor suspected me of unethical or illegal conduct, although there existed no basis whatsoever.</u>[1]

Fourth, we sought reconsideration of three aspects of that order which had been issued without hearing us. We pointed out material facts overlooked, *i.e.*, that there was neither motion practice nor any court order to buttress sanctions on Mr. Angermeir, and that the only reason Angermeir's damages had not been provided was that our attorney-client relationship with Mr. Angermeir had broken down and we would be withdrawing.[2] <u>Nevertheless, Your Honor refused to revoke the sanctions against Mr. Angermeir</u>. Dkt. 121.[3] This was in sharp contrast to Your Honor's apparent indifference to Defendants' mockery of Magistrate Judge Smith's order and disobedience of Your Honor's orders.

Fifth, we filed the motion to withdraw as counsel for Mr. Angermeir. Despite our communication breakdown with him, <u>Your Honor nevertheless ordered us to continue as his counsel and file a response</u> to Defendants' motion for sanctions. Dkt. 102.

Sixth, in our withdrawal motion, we requested a stay of proceedings for 30 days

---

[1] While courts sometimes direct production of documents for an "in camera" inspection, that is only to consider whether a *specific* document(s) is privileged or not. It is not - cannot be - an omnibus order of "produce everything."

[2] We had already informed the Magistrate Judge in the earlier March conference that we would be withdrawing as Mr. Angermeir's counsel, due to which the Magistrate Judge had not issued an order concerning Mr. Angermeir.

[3] Your Honor observed that even if I had "genuine personal issues" which precluded compliance with deadlines, "there are two counsel-of-record in the <u>Ritchie</u> action, which should reduce or eliminate the need for delays due to personal issues." Dkt. 121.

It would have been grossly irresponsible - and unacceptable - for a junior lawyer in a case to make court filings without approval from the lawyer in-charge. Indeed, Your Honor's own individual rules of practice provide:

> 4.A.   **Principal Trial Counsel**: The attorney who will serve as principal trial counsel <u>must</u> appear at <u>all conferences with the Court.</u>

Rules of Practice, 4A (emphasis in original). A similar provision appears in most Judge's rules of practice.

3

to permit Mr. Angermeier to obtain substitute counsel - standard practice in such situations. But Your Honor refused any stay. <u>Given the absence of any compelling reason, this refusal gave the impression to any reasonable person that Your Honor was in a hurry to get rid of the case for Defendants.</u> A 30-day stay would not have resulted in serious prejudice to anyone.

Seventh, in the conference of April 16, 2015, Your Honor said nothing about Defendants' discovery violations - not even an inquiry. But Your Honor's bias against Plaintiffs was palpable. Your Honor openly stated that <u>you were skeptical about Plaintiffs' claims</u>. Transcript of April 16, 2015, at 5.[4] <u>Your Honor said nothing about Defendants giving us the runaround</u> for discovery but instead, even at that stage, Your Honor was on the verge of imposing sanctions upon Plaintiffs demanding that Plaintiffs "have got to produce a significant amount of discovery or their claims are going to be thrown out." Tr. 16.

Further, your Honor demanded that Plaintiffs "cough up" their "bank statements and all of the bits and pieces that are listed, really, in the motion for sanctions," *id*. <u>The assumption reflected in Your Honor's comment, was, of course, that these eight Plaintiffs had in their possession, but had refused to produce, documents which would presumably negate their claims.</u> We are aware of no basis whatsoever for such an assumption; on the contrary, the eight Plaintiffs are unrelated to each other, from different parts of the country, and make substantially similar allegations that have been made by scores of persons in court filings (to our knowledge) by persons all over the

---

[4]That skepticism was totally unwarranted, as clear from scores of other cases including *Serin v. Northern Leasing*, 2009 WL 7823216 (S.D.N.Y. Dec. 18, 2009), an earlier action on behalf of six other Plaintiffs against these Defendants involving substantially similar claims, which claims were litigated for about six years and finally settled on the eve of trial with Defendants paying substantial sums of money. *Serin v. Northern Leasing,* 501 Fed. Appx. 39 (2nd Cir. 2012).

Perhaps more significant, just last week, on Thursday, June 11, 2015, in a case tried by Mr. Strutinskiy on substantially similar facts, a Manhattan jury returned a verdict of $1.25 million in compensatory damages against Northern Leasing. <u>Northern Leasing v. Kollars</u>, I. No. 14350 CV 2007 (N.Y. City Civil Court, N.Y. Co.). The fact pattern was the same as that here: Northern Leasing sued Mr. Kollars, an Arizona businessman, on an alleged lease. Mr. Kollars denied having signed that lease. After hearing all the testimony - essentially Defendants' "status report" to this Court - the jury deliberated for barely an hour before returning with that verdict.

Extremely significant were two questions that the <u>Kollars</u> jury sent for clarification from the judge: Whether they could award punitive damages against Northern Leasing, and whether there was any limit on damages that they could award Mr. Kollars. Those questions from the jury strongly suggest that a jury would be far from skeptical about Plaintiffs' claims or about Northern Leasing's scam.

4

country.[5]  Your Honor provided justification for these irrelevant documents that even Defendants had not raised, such as "whether or not there was mitigation," *id*.

Indeed, Your Honor observed that <u>anyone making a "serious" claim must produce boatloads of documents</u> ("These plaintiffs can't bring a RICO case and then claim they have no financial records, right?").  We are aware of no such requirement under any law, federal or state.

Moreover, Your Honor even went on to demand that Plaintiffs should get their bank accounts and canceled checks online.  I specifically pointed out that many of these persons were from places where even internet access might be an issue; these assumptions that they could simply get all these documents with the click of a mouse were unfounded.  As we found out later, many of the Plaintiffs had accounts in banks that are long out of existence with not a soul to tell us where the bank records are.  <u>Your Honor has now decided to punish Plaintiffs for that.</u>

Perhaps the most telling was Your Honor's assertion about Plaintiffs that "They all signed up for these leases with corporate entities, right?" Tr., 20.  No, they didn't, and that's why we're in Court!  <u>A reasonable person can only conclude  that Your Honor has already decided that the Plaintiffs are lying, and each of them did sign the leases, and that Your Honor was just preparing the grounds for destroying the Plaintiffs.</u>  That conclusion would be justified by several similar observations Your Honor made, such as:

> . . if they're claiming they have no resources, and they're going into penury because of things, and they show healthy cash flow and income from sources that have to do with businesses that they're claiming didn't exist, that can be relevant.  If they're claiming the business went -- the business that had the lease went out of business at a certain time, then the fact that it's showing revenue in a year it wasn't supposed to show revenue could be relevant.

Tr. 40.  <u>None of this had the slightest relevance to any issue at bar.</u>  This case is about Defendants bringing bogus lawsuits, not about Plaintiffs' "resources," "penury", "healthy cash flow," income" or anything else.  Whether a Plaintiff was a millionaire or a homeless person, Defendants had no right to launch bogus lawsuits and try to bully them into paying tribute.

Eighth, it was Defendants, not Plaintiffs, that had stymied discovery by refusing the most critical document.  For example, as pointed out in my letter of April 16, 2015,

---

[5]In *Pludeman v. N. Leasing Sys., Inc.*, 10 N.Y.3d 486 (2008), four other unrelated persons made substantially similar allegations of fraud (although they did not allege forgery), and New York's highest court, in its seminal ruling, upheld a claim for punitive damages against Northern Leasing as well as its principal officers.

5

dkt. 122 - the very day that Your Honor skewered Plaintiffs for allegedly giving the runaround on discovery -

> . . the heart of the racketeering scheme is the compensation and incentive structure.  Normal businesses do not pursue claims on forged documents; at worst, they cease collection efforts promptly upon discovering the forgery.  But not these Individual Defendants.  What motivated the individual defendants in bringing bogus lawsuits, and in persisting in them even after being confronted with the forgery?  The compensation and incentive structure of the underlying scheme, the income and related documents go to the Individual Defendants' *scienter*, and is, once again, an integral part of the case.

Dkt. 122, at 2.  Yet, Defendants had produced nothing responding to these requests. Further, Defendants had given an incredibly amateurish runaround on even straightforward Interrogatories[6] which runaround *clearly and unmistakably* made a mockery of Magistrate Judge Smith's order to specify "identifying" information to "hone down" subjects for deposition, *id.*  Nevertheless, Your Honor refused to impose sanctions on Defendants.  This was in sharp contrast to the sanctions imposed upon Mr. Angermeir, which appears to have been done with unseemly eagerness.   Similarly, Defendants had not produced documents concerning ISO performance and complaints, and refused to provide meaningful ESI.  Plaintiffs had made these requests in August 2014, and had raised them repeatedly with Defendants as well as with the Magistrate Judge.

    Ninth, in the order of April 27, 2015 (dkt. 129), Your Honor noted that Your Honor now had a "better" understanding of Plaintiffs' case, and ordered Defendants to produce essentially all the discovery that Plaintiffs had sought in my April 16th letter, *i.e.*, documents responsive to Plaintiffs' requests 15, 16, 17, 18, 21, and 22.  By a subsequent order (dkt. 137), Your Honor approved Plaintiffs' list of search terms (less 13 of the 258 terms suggested), and ordered Defendants to produce the ESI within 10 days, *i.e.,* on or before May 17, 2015 (dkt. 137).

    Defendants utterly failed and refused to produce much of these documents, as

---

[6]In response to Plaintiffs' Interrogatories seeking the identity, whereabouts, and discoverable information possessed by potential witnesses, Defendants had served a laundry list of 72 names of employees with no further information.  It cannot be seriously disputed that this was the perfect setup for a wild goose chase; we couldn't distinguish someone who merely answered the telephone from the person who approved the filing/continuance of a bogus lawsuit against a Plaintiff.  We raised this issue with the Magistrate Judge, who directed us to serve a second set of Interrogatories so that "we could hone it down and figure out who . . to depose." Dkt. 116-2 (Tr.), at 15.  We did so, and Defendants gave an equally uninformative response.

pointed out in my sanctions motion papers, dkt. 158:[7]

>    9.   Defendants have not produced some of the most material documents ordered by this Court.  For example, Defendants have <u>not produced</u>
>    a.   <u>Any</u> tax return for <u>any</u> of the Defendants (Req. 22), for <u>any</u> period of time (the requests covered the period 1998 to date);
>    b.   <u>Any</u> document concerning "Job descriptions, personnel records, complaints, performance reviews, employment files" for <u>any</u> of the Defendants (Req. 21);
>    c.   <u>Any</u> "employment agreements concerning" <u>any</u> of the Defendants or <u>any</u> amendments to such agreements (Req. 17);
>    d.   <u>Any</u> payments to the Sussman Defendants (Req. 16), or <u>any</u> agreement with Sussman Defendants prior to January 2011 (Req. 17);[8]
>    e.   <u>Any</u> documents concerning compensation paid to ISOs for <u>any</u> period of time (Req. 15);
>    f.   <u>Any</u> documents concerning compensation paid to the Individual Defendants Cohen, and/or Krieger (Req. 16);
>    g.   Any W-2s or pay slips for any Defendant.  As noted, some emails have been produced reflecting specific individual bonuses (i.e., specific numbers) to Defendants Brown, Cuccinota, Nugent and Taylor (Req. 22).
>    h.   <u>Any</u> document reflecting the basis on which incentive compensation was calculated, based, or paid (Req. 15, 16, 17).

Dkt. 158, at 3-4 (emphasis in original).  <u>These documents go to the root of Plaintiffs' claims.</u>

Clearly, the shoe is on the other foot: <u>it is not Plaintiffs, but Defendants, who gave the runaround from the inception of discovery, wilfully withheld critical information, and have continued to refuse to produce that even after two specific orders issued by Your Honor.</u>

Nevertheless, Your Honor summarily denied Plaintiffs' motion for sanctions against Defendants - without requiring Defendants even to respond to Plaintiffs' motion - because you've decided to dismiss Plaintiffs' claims?  <u>Unlike the items for which Your</u>

---

[7]We could have filed this sanctions motion on May 18, 2015.  But unlike Defendants, it is not our practice to litigate primarily through sanctions motions.  Instead, we gave more than sufficient time thereafter for Defendants to produce whatever they intended to, and filed that sanctions motion only on June 11, 2015.

[8]Defendants have produced two agreements of January 2011 and January 2012.

7

<u>Honor is imposing sanctions upon Plaintiffs, the items that Defendants have not produced are (a) clearly in Defendants' possession; (b) critical to the case; but (c) withheld by Defendants wilfully in defiance of Your Honor's orders</u>.  Nevertheless, Your Honor won't even *consider* Defendants' failures?  Just because Defendants filed their motion earlier?  In fact, were Plaintiffs' motion to be considered first, it is Defendants' pleadings that would have to be struck for wilful disobedience, which would make all the discovery ordered of Plaintiffs to be totally irrelevant, assuming, *arguendo*, they had any relevance in the first place.

  Each Plaintiff read Your Honor's orders, and submitted a declaration under penalties of perjury that they've done so.  Each Plaintiff responded by doing everything he/she could to comply with the orders.  Each scourged through their records and produced everything they had.  Some even made multiple trips to their banks.  Each gave a categorical declaration that they had produced everything in their possession, custody, and control.  What more could be expected?  <u>Caselaw as well as common sense dictate that that sanctions be imposed only where a party *wilfully* disobeys a court order, and refuses to produce documents which, *evidence bears out,* is in his/her possession. That is certainly not the case here.  Nevertheless, Your Honor has decided to dismiss - dismiss! - Plaintiffs' claims while simultaneously refusing to even consider Defendants' violation.</u>

  Tenth, the record is clear that <u>Mr. Lillienstein made wild and irresponsible allegations against Ms. Ritchie, under penalties of perjury, in Court filings, essentially calling her a liar</u>.  Nevertheless, Your Honor refused to even consider her motion for sanctions against him.

  There is no suggestion that any Plaintiff ever committed spoliation or that he/she is wilfully withholding documents.  Even Defendants have not suggested that any of the documents that Plaintiffs have not produced (because they don't have such documents) are somehow <u>critical</u> to the case; in fact, everything that Plaintiffs are alleged to have <u>not</u> produced - such as personal bank statements and last year's tax returns - is completely irrelevant to the central issues, which - it merits repetition - is whether *Defendants knowingly filed bogus lawsuits*.

  So, the net result is that, for example, Dr. Shabnam - who never had any business, but is a physician working for a hospital in California - is sued by Defendants in the City Civil Court on a bogus lease that she knew nothing about.  She's injured, and, along with several others, complains to this Court, the bastion of hope for the common man.  Your Honor asks her to produce documents that have nothing to do with Defendants' bogus lawsuit, to prove the negative, *i.e.,* that she never owned a business.  And because she does not have those documents - or she misunderstood Your Honor's order - her claims are dismissed?  What is Dr. Shabnam - or any of the other Plaintiffs, or indeed, the common man - to understand of "justice" dispensed by federal courts?

  The above are not simply based on "adverse" judicial rulings, of which I have had

8

my share over the past three decades.  The record reflects that Plaintiffs have been denied basic protections, been ordered to produce documents which are (at best) of peripheral relevance, had their sacrosanct attorney-client privilege violated, and although Plaintiffs did everything humanly possible to comply with the court orders, they are being visited with the harshest of penalties for no fault of theirs.  Defendants, on the other hand, gave the runaround from the inception of discovery, effectively mocked Magistrate Judge Smith's specific orders concerning interrogatories, wilfully refused to produce pivotal documents in direct violation of two court orders, and made stunningly wild allegations against Ms. Ritchie - but Your Honor will not even consider sanctions against them.  Clearly, a reasonable person would have grounds to question Your Honor's impartiality.

Accordingly, we request that Your Honor enter an order recusing yourself.  *See, e.g., Martinez v. Queens Cnty. Dist. Atty.*, 2014 WL 1011054, at *3 (E.D.N.Y. Mar. 17, 2014) *aff'd,* 596 F. App'x 10 (2d Cir. 2015) *cert. denied sub nom. Martinez v. Brown*, 135 S. Ct. 1855 (2015).  Another similar action against substantially the same Defendants based upon substantially similar allegations by seven other unrelated persons is pending before Judge Roman, Aghaeepour, 14 CV 5449 (NAR), and these two actions may be consolidated with that proceeding.

Simultaneously, we also request that the order denying Plaintiffs' sanctions motion be withdrawn, that Defendants be required to respond to the said motion, and that both sides' sanctions motions be transferred to Judge Nelson or the new Judge.

                                      Respectfully submitted,

                                      Krishnan Chittur, Esq.
                                      Attorneys for Plaintiffs (except Angermeier)

cc:    Robert Lillienstein, Esq. (By ecf)